153 So. 737

### BROWN FUNERAL HOMES INS. CO. v. DOBBS.

6 Div. 539.

Supreme Court of Alabama.

March 22, 1934.

Rehearing Denied April 12, 1934.

Huey, Welch & Stone, of Bessemer, for appellant.

Ross, Bumgardner, Ross & Ross, of Bessemer, for appellee.

BROWN, Justice.

This action is by appellee against appellant for misfeasance in the performance of a contract entered into by the plaintiff, acting through and by her agent, Helen Dobbs, and the defendant acting by and through its agent, McCollum, to embalm and prepare the body of plaintiff's deceased husband, G. W. Dobbs, for burial.

The case was submitted to the jury on the third count of the complaint and the plea of the general issue. This count, as matter of inducement, avers that on June 5, 1932, the defendant was engaged in the undertaking business in the city of Bessemer, Jefferson county, Ala., and in preparing dead bodies for burial for the public, and furnishing caskets for reward ; that in consideration of the surrender and cancellation of a burial certificate theretofore issued to said Dobbs in his lifetime for a reward paid therefor, consisting of weekly dues, the defendant undertook and obligated itself to embalm the body of said Dobbs, after his death, and prepare the same for burial, to furnish a

casket at a cost of not exceeding $250, and attend the burial, performing the duties of an undertaker, and an agreement to pay an additional sum of $30; the defendant contracted with plaintiff to embalm the body, furnish a casket, and perform the ordinary and usual duties of an undertaker in and about the interment. The count alleges that the defendant, acting through and by its agents acting within their authority, "so negligently embalmed said body that as a proximate result thereof said body immediately thereafter and before burial on June 6, 1932, began to decompose and purge and foul and offensive odors arose therefrom which were inhaled by the plaintiff, and the face of said dead body turned a darkened color, and as a proximate result thereof the plaintiff suffered the following injuries and damages, to-wit: she was made sick by the inhaling of said foul and offensive odors, she was caused to suffer great physical pain and mental anguish, and was greatly mortified at the sight of the dead body of her said husband so darkened and decomposed, and she was deprived of the privilege of giving her husband a befitting funeral, and lost the $30.00 paid or agreed to be paid to the defendant, all to her damage aforesaid."

The breach alleged is not of the contract evidenced by the burial certificate or policy, or of any duty arising therefrom, but of the duty arising out of the alleged contract between the plaintiff and the defendant, imposing on the defendant the duty to exercise the care of a reasonably prudent and careful man, skilled in the art of embalming corpses and preparing the same for burial.

[█ The duty arising out of these circumstances is not unlike that resting upon a physician or surgeon called to professionally attend a patient, "to exercise such reasonable care and skill in respect to the duty assumed as physicians and surgeons in the same general neighborhood, in the same general line of practice, ordinarily have and exercise in like cases." Robinson v. Crotwell, 175 Ala. 194, 203, 57 So. 23, 26; Brown Funeral Homes & Ins. Co. v. Baughn, 226 Ala. 661, 148 So. 154.

█ The averments of said count characterize it as in trespass on the case, and the plaintiff assumed the burden of establishing to the reasonable satisfaction of the jury the contractual relation between the plaintiff and the defendant, as alleged in said count. Newton v. Brook, 134 Ala. 269, 32 So. 722; Mobile Life Insurance Co. v. Randall, 74 Ala. 170; Southern Railway Company v. Jones, 132 Ala. 437, 31 So. 501; Alabama Power Co. v. Emens, ante, p. 466, 153 So. 729.

█ The evidence is without dispute that Dobbs died at his residence in Bessemer about midnight of June 5, 1930; that the defendant was immediately notified of his death and received the body about 1 o'clock a. m. June 6th, and carried it to the funeral home of defendant and embalmed it. Miss Helen Dobbs, acting for plaintiff, called at the funeral parlors of the defendant, selected a casket, which, according to her version of the transaction, was more expensive than the casket furnished by the defendant under the policy, and agreed to pay the difference in the two, $30.00, and thereafter paid this difference. To quote from her testimony: "The time that I went up there on Sunday morning was about 9 o'clock. I talked to Mr. McCollum there in regard to the funeral arrangements. I had the burial policy when I went there. My father's middle name was Washington, the 'W' stood for Washington. His full name was George Washington Dobbs. * * * My mother gave me the policy and I took it to the defendant's undertaking shop. * * * He (McCollum) handed me a pencil and asked me to sign it. * * * That is my writing down there on the bottom, that is where I signed it. I didn't notice whether this was filled out when we signed it or not, I didn't notice it."

The statement at the foot of the policy is in these words: "Birmingham, Ala., June 6, 1932. This is to certify, That the Brown Funeral Homes & Insurance Co., Inc., has performed each and every obligation and duty required of it under Certificate No. 68622, issued to George W. Dobbs to the full and entire satisfaction of the representatives of deceased and to the family of the deceased. Miss Helen F. Dobbs."

The witness (Helen Dobbs) further testified: "He (McCollum) told me to sign this paper, it would relinquish the rights—he told me to sign the paper and relinquish the rights on the policy. * * * I selected the casket for my mother. Mr. McCollum showed me the caskets around there. * * * He showed me the casket and told me that this is the one with this policy, and I selected one that I liked best. * * * The first one I picked out he said the price of it was $250.00, the casket and the whole job. I picked out the one that I liked best and he said that would be $280.00. I asked him what that included and he told me everything. I asked him if that included everything and he said, yes. I mean by every-

thing, taking care of the burial and the casket and everything, the embalming. I selected the $280.00 job and he told me the difference between it and the policy would be $30.00. I did not pay the $30.00 then but paid it the next morning. I paid to Mr. McCollum, the gentleman right here at the table. I left the policy with Mr. McCollum, the same man I paid the $30.00 to. He did not make any objection that the policy was not paid up at that time when I left it with him. I have not seen this policy since then. I paid this (the $30.00) with my own money to Mr. McCollum. I did not say anything to my mother when I paid it. I told her about it several days later. My mother did not request me to pay it. She paid me back some time later. It was the middle of the week when I told her I paid this $30.00."

And on cross-examination: "I understood that the policy provided for everything. I understood that I was getting the embalming and the casket under the burial policy. I understood that I was merely paying $30.00 to get the additional or higher priced casket. I obtained a burial robe for my father from the funeral home. I made the arrangements for my father to be buried at Cedar Hill. Mr. McCollum made the arrangements for the opening of the grave. He told me that he would do that for me."

McCollum testified: "I remember the occasion of the body of Mr. Dobbs being at the Brown Funeral Homes & Insurance Company's place of business here in Bessemer in June of last year. I saw the body. It was June 6th, 1932. When I saw the body it was in the morgue. It had already been embalmed before I saw it. At the time I saw the body there had been an incision made in the abdominal cavity and embalming fluid had been injected into the abdominal cavity in my opinion. When I saw this body on Sunday morning it was around 8:30 o'clock. I had some conversation with Miss Helen Dobbs on the morning of June 6th, 1932. I had seen the body prior to that conversation. She came in and made arrangements for the funeral, selected the casket and the robe and made all the arrangements for the funeral on Monday afternoon. She brought with her a burial policy. The arrangements for the funeral were made under this burial policy. I did not have any other or different contract than the one that is in this burial policy. I did not have any agreement about her selecting a casket of a higher price than the one covered by the burial policy. Miss Helen Dobbs selected a burial robe for her father, that burial robe was not covered by that policy, it is not. I had an agreement with her as to the price of the burial robe. It was $15.00. I made the arrangements for the opening of the grave at Cedar Hill. I made these arrangements for the opening of the grave with Mr. Joe Scott, the City Clerk for the City of Bessemer. The city makes a charge for opening the grave of $15.00 for a box grave, and $17.50 for a vault grave. This grave was a box grave. I stated to Miss Helen Dobbs that I would make the arrangements for the opening of the grave. I told her the cost of that and she told me that she would pay me the money for that. I had an agreement with her that this $30.00 was for the robe and for the opening of the grave at Cedar Hill."

We are of opinion that the plaintiff failed to meet the burden of showing a contract between the plaintiff and the defendant, as averred in the third count of the complaint, and that the court erred in refusing the affirmative charge which defendant requested in writing.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.