The sole question in this case is whether the plaintiffs' suit was time barred. To answer that question, we must revisit the distinctions between an action for trespass and an action for trespass on the case, and determine whether plaintiffs' suit against a funeral home, in which they claimed damages for breach of contract, for trespass, *Page 698 
and for outrageous conduct, was an action for trespass, or whether it was an action for trespass on the case; we must also determine whether, under the facts of this case, the alleged wrong resulted from a breach of promise or from a breach of a duty growing out of the relationship of the parties or imposed by law.
The trial court granted summary judgment in favor of the defendant, and found that the plaintiffs should have filed their action within one year of the date of the occurrence causing the alleged injury and damages. The one-year limitations period applies in this case because of the time when the alleged cause of action arose.[1]
 FACTS
Dennis M. Eidson, husband of Anna Eidson, died in 1979 while on a business trip to South Africa. Arrangements were made by his employer, Quartrol Corporation, to have the body shipped by air from South Africa to the Johns-Ridout's Chapel in Birmingham, Alabama; Quartrol also purchased and shipped a casket for Eidson's burial. Deposition testimony shows that employees of Johns-Ridout's picked up Eidson's body at the Birmingham airport and transported it to their mortuary. According to the Eidsons, a Johns-Ridout's representative suggested that the family not try to view the body at the airport, but rather wait until Johns-Ridout's could remove the body from its shipping case and prepare it for viewing. The plaintiffs claim that in a later telephone conversation a Johns-Ridout's representative told them that the casket purchased by Quartrol was not of an American type and that it had been damaged in transit and suggested that they consider purchasing another one. During that conversation, Gregory Eidson, the son of the deceased, and Anna, his widow, told the representative that the family wished to view the body the following morning, Saturday, February 10, 1979, and asked to be notified beforehand if the body would not be ready for viewing at that time. When the Eidson family arrived at Johns-Ridout's the next morning, they claim, they were led to a garage, where the body lay, still in the "sardine can" shipping case, amid garbage cans and people working on automobiles. The Eidsons stated in their depositions that the body was floating in formaldehyde; that there were no shoes on the body; that the body was covered with straw; and that formaldehyde was dripping from the shipping case onto the floor of the garage. The Eidsons stated in their depositions that, while having to view the body of a loved one under such unpleasant conditions, a Johns-Ridout's representative approached the widow to suggest that she consider buying another casket. Ben Staton, president of Quartrol, who had been present at the viewing, stated in his deposition that the Johns-Ridout's representative said, "You mean that you're going to bury a loved one in a casket like that?" After the family indicated that they were not interested in purchasing another casket, the body was satisfactorily prepared and buried by Johns-Ridout's. The Eidsons contend that the Johns-Ridout's employee deliberately showed the body of Dennis Eidson to them in its unprepared condition with the intent of shocking them into purchasing a more expensive casket. Their contract claim, as we understand their argument, is based upon the defendant's breach of its promise to have the body properly prepared for viewing.
According to the complaint, and according to the deposition testimony of the Eidsons, all of the family members who viewed the body in the "sardine can" shipping crate were greatly traumatized at that time and were caused to suffer great mental distress that has continued from that time to the present. It is undisputed that no one in the Eidson family complained to Johns-Ridout's or contacted an attorney until *Page 699 
nearly five years later. The Eidsons filed suit on February 21, 1984, against Johns-Ridout's and four fictitious parties, who have never been named, alleging outrageous conduct, trespass, and breach of contract. The trial court granted summary judgment for the defendants on the outrageous conduct and trespass counts on February 14, 1986, and on the contract count on July 22, 1986, on the ground that the statute of limitations had run. Whether the suit was time barred is the only issue raised by the appellants on appeal.
 I
We first consider whether, by these alleged facts, plaintiffs have presented a scintilla of evidence to support a claim against the funeral home on a theory of trespass.
Actions for trespass are governed by the six-year statute of limitations in Alabama, while actions for trespass on the case at the time this cause of action accrued were governed by the one-year statute. C.O. Osborn Contracting Co. v. AlabamaGas Corp., 273 Ala. 6, 135 So.2d 166 (1961); Code 1975, § 6-2-34(1). The Eidsons contend that summary judgment was improperly granted on their outrageous conduct and trespass counts because the actions of the Johns-Ridout's representative constituted common law trespass because the injury was "direct" and "immediate." This is a novel argument, but we find no legal support for it. We disagree.
One of the leading decisions in Alabama explaining the distinction between trespass and trespass on the case isSasser v. Dixon, 290 Ala. 17, 273 So.2d 182 (1973). There, this Court wrote:
 "The true distinction between trespass and trespass on the case lies in the directness or immediate character of the injury. An injury is to be regarded as immediate, and therefore a trespass, only where it is directly occasioned by, and is not merely a consequence resulting from, the act complained of. Pan American Petroleum Co. v. Byars, 228 Ala. 372, 153 So. 616 . . .; City of Fairhope v. Raddcliffe, 48 Ala. App. 224, 263 So.2d 682; Leonard v. Nat Harrison Associates (Fla.App.), 137 So.2d 18. In Crotwell v. Cowan, 240 Ala. 119, 198 So. 126, this court said:
 " 'Under the common law, the foundation for civil liability for injuries to persons and property consequent upon the unintentional application of force, whether the act be affirmative or omissive, is negligence, and the appropriate common law action is case, speaking more correctly, trespass on the case. But when force is intentionally applied by direct affirmative act it is trespass and the appropriate action for the recovery of damages therefore is trespass. (Citations omitted.).' "
290 Ala. at 19-20, 273 So.2d at 183-84.
The Eidsons argue that the tort of outrageous conduct, as that cause of action is defined in American Road ServiceCo. v. Inmon, 394 So.2d 361 (Ala. 1980), requires a showing of the direct application of force, and thus that the action sounds in trespass and is governed by the six-year statute, Code 1975, § 6-2-34(1). In Inmon, this Court defined the elements of outrageous conduct as follows:
 "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."
394 So.2d at 365.
The Eidsons contend that the conduct of the Johns-Ridout's employees was beyond all possible bounds of decency, involving direct and intentional conduct historically characteristic of trespass. In support of their contention, they cite this Court's cases of W T. Ratliff Co. v. Henley,405 So.2d 141 (Ala. 1981); Born v. Exxon Corp., 388 So.2d 933
(Ala. 1980); Borland v. Sanders Lead Co., 369 So.2d 523
(Ala. 1979); and Rushing v. Hooper-McDonald, Inc.,293 Ala. 56, 300 So.2d 94 (1974). While plaintiffs recognize that these cases all involve damage to property, they contend that the analysis of the "direct force" concept in those cases is similar to the analysis which must be applied in personal *Page 700 
injury actions involving alleged intentional infliction of severe emotional distress.
In City of Fairhope v. Raddcliffe, 48 Ala. App. 224,263 So.2d 682 (1972), Judge Wright, writing for the Court of Civil Appeals, stated:
 "It seems to be commonly accepted among the bar that a count alleging a willful or wanton act is always a charge in trespass.
 Such is not literally true. To be a trespass there must be an act of direct force producing injury or damage. A wanton omission of duty to act is not a trespass. There is no direct force applied and the injury is not produced by application of force, but is consequential of an omission of a duty to act."
In Raddcliffe, however, the Court of Civil Appeals held as follows:
 "There is only one definition of common-law trespass. This is quoted in Louisville Nashville Railroad Company v. Johns, 267 Ala. 261, 101 So.2d 265, from an unpublished opinion in Sibley v. Odum, 257 Ala. 292, 58 So.2d 896, as follows:
 " ' "Trespass is of three aspects: (1) vi et armis (personal injuries by force directly applied); (2) de bonis asportatis (the carrying away of the goods of another); (3) quaere clausum fregit
(direct injuries to the freehold).
 " ' "They all carry the necessary element of an intentional (or wanton, its equivalent in law), direct application of force by the defendant or under his authority. Unless there is such direct force, there can be no trespass in any aspect. . . .
 " ' "Case is when injury occurs to the person or property of another when as to the defendant so charged there is no intentional direct application of force, but either a negligent unintentional application, or when the act was intentionally committed by one who is guilty of a trespass, but the defendant is legally responsible for such willful act of the other on such principle as respondeat superior. In that event the one is guilty of a trespass and for such trespass the other is responsible in case, because he did not commit a trespass and there was no writ which provided a remedy." ' (267 Ala. at 277, 101 So.2d at 280.)
 "It seems to be commonly accepted among the bar that a count alleging a willful or wanton act is always a charge in trespass. Such is not literally true. To be a trespass there must be an act of direct force producing injury or damage. A wanton omission of duty to act is not a trespass. There is no direct force applied and the injury is not produced by application of force, but is consequential of an omission of a duty to act."
48 Ala. App. at 226-27, 263 So.2d at 684-85.
In J. Shipman, Handbook of Common-Law Pleading § 39 (3d ed. 1923), the distinctions between trespass and case are further examined:
 "Unless the case falls within one of the exceptions, . . . an action on the case will not lie for an injury committed with force, but the party injured must sue in trespass. Trespass is excluded, however, if the harm resulted indirectly from the act of the defendant, or the injury was not to the possession of the plaintiff.
 "Force is either actual or implied. Assault and battery, tearing down a fence, or breaking into a house are examples of actual force, and there is no difficulty in determining that trespass, and not case, is usually the only remedy.
 "In many cases where there is no actual force, the law will imply force, and the effect will be the same as if there had been actual force, so far as regards the form of action. Force, as we have seen, is implied in every trespass quare clausum fregit. If a man, without right, goes upon another's land, however quietly and peaceably, the law will imply force, and trespass is the remedy, not case; and the same is true where a man's cattle stray upon another's land. Force is also implied in every false imprisonment, and the proper remedy is trespass, and not case. And where a wife, daughter, or servant is debauched, or enticed away, the law implies force, notwithstanding *Page 701 
standing their consent, and the husband, parent, or master may declare in trespass. And where a fire is started, and, as an immediate consequence, another's property is destroyed, there is constructive force.
 "Generally, as we have seen, a mere nonfeasance cannot be regarded as forcible; for where there has been no act there can be no force. There is no force, for instance, in a mere detention of goods without an unlawful taking; or in neglect to repair the bank of a stream, whereby another's land is overflowed; or in neglect to repair a fence whereby another's animal escapes on to the land of the person so negligent or elsewhere, and is injured; and in these instances case, and not trespass, must be the remedy.
"* * * *
 "As we have shown, in treating of trespass, where the property or right injured is intangible, as the right to reputation, or health and comfort, or incorporeal real property, the injury can never be considered as committed with force, however malicious and however contrived, for the matter injured cannot possibly be affected immediately by any substance. Case, therefore, and not trespass, must be the remedy. . . ." (Emphasis added.)
We conclude that the actions of the defendants in allowing the Eidsons to view the body of Dennis Eidson in such disturbing circumstances, being neither actual nor implied force directed upon the persons of the plaintiffs, if actionable at all, would be actionable as a trespass on the case. The plaintiffs waited more than five years after the incident to file their lawsuit; the one-year period of limitations for actions on the case had already run. The trial court properly granted summary judgment in favor of the defendants on their outrageous conduct and trespass counts.
 II
The Eidsons next contend that summary judgment was improperly granted on their claim for breach of contract. The evidence presented in opposition to summary judgment is sufficient for a jury to find that Anna Eidson contracted with Johns-Ridout's and subsequently paid for the transportation of the body from the airport; for preparation for viewing; for the wake; and for the burial services. The trial court granted summary judgment, reasoning that any action arising under these particular facts, and involving this claim, would lie ex delicto and notex contractu, and thus that this claim also would be barred by the one-year statute of limitations applicable at the time the alleged cause of action occurred. We can appreciate the dilemma faced by the learned trial judge, because this Court has had difficulty agreeing on cases involving the question of whether an action is ex delicto or excontractu, but we hold that plaintiffs produced at least a scintilla of evidence that the defendants made specific promises to plaintiffs and then failed to perform as promised.
Paragraph four of the plaintiffs' complaint contains their breach of contract claim. The plaintiffs assert that "defendants breached their contract, both implied and express, with the plaintiff by acting in a manner outside the scope of a reasonable funeral home in conducting preparation of the body for funeral services by contacting the plaintiff [and] in soliciting her coming to the funeral home to view the body in an unacceptable state in an effort to have the plaintiff buy a more expensive casket in preparation for the service."
The plaintiffs contend that a contractual obligation arose when they relied on the promises of Johns-Ridout's representatives that the body would be ready for viewing when they arrived at the mortuary on that Saturday morning, and that Johns-Ridout's breached that obligation by failing to properly prepare the body. Of course, after the plaintiffs had seen the body in the condition about which they complain, it was prepared for viewing at the wake, and the Eidsons make no claim that the funeral itself was not performed satisfactorily, nor that the transportation or communications charges were improper. In short, the plaintiffs do not contend that they failed to receive what *Page 702 
they bargained for, except they contend that the defendants failed to have the body prepared for viewing as promised, and that the defendants intended that they see the body in the "sardine can" so they would purchase a better casket.
Does the plaintiffs' "contract" claim sound in tort or contract? We are of the opinion that the plaintiffs' allegations and proof support a contract action and entitle them to a trial.
As pointed out earlier, this Court has had many occasions to examine claims to determine whether they sound in tort or in contract, and the Court has been frequently divided in the resolution of this issue. See Horton v. Northeast AlabamaRegional Med. Ctr., Inc., 334 So.2d 885 (Ala. 1976);Berry v. Druid City Hosp. Bd., 333 So.2d 796
(Ala. 1976); Hembree v. Hospital Board of MorganCounty, 293 Ala. 160, 300 So.2d 823 (1974); Smith v.Houston County Hosp. Bd., 287 Ala. 705, 255 So.2d 328
(1971); Paul v. Escambia County Hosp. Bd., 283 Ala. 488, 218 So.2d 817 (1969); Vines v. Crescent TransitCo., 264 Ala. 114, 85 So.2d 436 (1956).
In Wilkerson v. Moseley, 18 Ala. 288, 290-91 (1850), quoted in Mobile Life Ins. Co. v. Randall, 74 Ala. 170,177 (1883), Mr. Justice Parsons, writing for the Court, discussed the standard for determining whether a cause of action sounded in contract or in tort. He said:
 "Perhaps the best criterion is this: if the cause of action, as stated in the declaration, arises from a breach of promise, the action is ex contractu; but if the cause of action arises from a breach of duty growing out of the contract, it is in form ex delicto, and case."
In Waters v. American Casualty Co., 261 Ala. 252,73 So.2d 524 (1953), this Court said:
 "We hold that there may be liability under both rules . . . based either on negligence or bad faith. . . .
 "This Court has long since taken the position that under certain circumstances, for the breach of a contract there may be either an action of assumpsit or one in tort. That means that when there is a contract expressed to exercise reasonable diligence in the performance of an act, or when there is a specific contract to do an act, a failure to exercise reasonable diligence on the one hand or to do the act on the other gives rise to an action of assumpsit. But when the contract is to exercise reasonable care to perform the act, a failure to exercise such reasonable care may be redressed by either assumpsit or in tort. . . . When the contract does not in terms require reasonable care in doing the act stipulated to be done, the law imposes a duty — but does not imply a contract — to exercise due care in doing the act; and, therefore, when negligence exists in doing that act an action in tort only is available because there is no express or implied contract which is breached."
261 Ala. at 258, 73 So.2d at 525.
In Jefferson County v. Reach, 368 So.2d 250
(Ala. 1978), this Court discussed the distinction between a breach of contract and a breach of a duty imposed by law:
 "The distinction between a claim ex contractu and one ex delicto is found in the nature of the grievance. Where the wrong results from a breach of a promise, the claim is ex contractu. However, if the wrong springs from a breach of a duty either growing out of the relationship of the parties, or imposed by law, the claim is ex delicto."
368 So.2d at 252.
We point out once again that plaintiffs' appeal is from the trial court's granting of defendants' motion for a summary judgment. In Payne v. Alabama Cemetery Ass'n, Inc.,413 So.2d 1067 (Ala. 1982), this Court set out the rule of review we follow in such cases:
 "The scintilla of evidence rule substantially increases the burden for sustaining a motion for summary judgment. Under the scintilla of evidence rule, no summary judgment can be granted if a scintilla of evidence exists to support the nonmovant's position. Missildine v. Avondale Mills, Inc., 415 So.2d 1040 (Ala. 1981); Browning v. Birmingham News, 348 So.2d 455 (Ala. 1977). The scintilla of *Page 703 
evidence rule provides that there need be only a gleam, glimmer, spark, the least bit, or the smallest trace of evidence in support of the non-moving party. Watkins v. St. Paul Fire and Marine Insurance Co., 376 So.2d 660
(Ala. 1979)."
Was there a scintilla of evidence that defendants breached a promise and that plaintiffs suffered damages as a proximate consequence of the breach? We believe so.
In her deposition, Mrs. Eidson testified:
 "Q. You also state in your complaint that Johns-Ridout committed a trespass and mishandled your husband's body. How did they do that?
 "A. They were supposed to have that body ready for me to view when I arrived, and they took me out into that garage, all the garbage cans and shipping case, and him in a tin box with straw still on him, and I think it was appalling."
We reach this conclusion based, in part, on the fact that in Alabama cases in which one seeks to impose legal liability because of interference with a dead body raise peculiar problems and are generally recognized to be suigeneris. For an excellent discussion of the Alabama cases involving actions by survivors for an alleged "interference with dead bodies," see, Payne, "Recovery of Damages for Unpleasant Mental Stimuli," 3 Ala.L.Rev. 30, 46-51, (1950); see also Jordan Undertaking Co. v. Asberry, 230 Ala. 97,159 So. 683 (1935); Jefferson County Burial Society v.Scott, 218 Ala. 354, 118 So. 644 (1928); (2d appeal)223 Ala. 384, 136 So. 788 (1931); (3d appeal) 226 Ala. 556,147 So. 634 (1933); Union Cemetery Co. v. Alexander,14 Ala. App. 217, 69 So. 251 (1915); Birmingham Transfer Traffic Co. v. Still, 7 Ala. App. 556, 61 So. 611 (1913);
Although we hold that the plaintiffs have shown that they are entitled to prove, if they can, their contract claim, they will have to prove the contract which they claim has been breached.Newton v. Brook, 134 Ala. 269, 32 So. 722 (1901). We say this because an action for interference with a body may be in pure tort, or, as in the case of a nonfeasance, in pure contract. If there has been a misfeasance in an intermediate situation which constitutes a breach of the contract, the claimants clearly may recover in tort. This Court has held, however, that where a contract is alleged and the proof shows only conduct on the part of the defendant which constitutes a misfeasance, the contract must be shown to support the cause of action. Brown Funeral Homes Ins.Co. v. Dobbs, 228 Ala. 482, 153 So. 737 (1934).
Based on the foregoing, we are of the opinion that the judgment of the trial court is due to be affirmed, in part, and reversed, in part, and that the cause is due to be remanded to the trial court for proceedings consistent with this opinion.
AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED.
ALMON, SHORES, BEATTY, ADAMS, HOUSTON, and STEAGALL, JJ., concur.
TORBERT, C.J., and JONES, J., concur in the result.
[1] Effective January 9, 1985, § 6-2-39, the one-year statute, was repealed by Ala. Acts 1984-85, No. 85-39, § 3. The applicable period of limitations for "[a]ll actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section" is now two years, § 6-2-38(l). The two-year statute of limitations has no application to this action, which was based upon actions occurring in February 1979, and which was filed in February 1984.