This is an appeal from a judgment entered in favor of the plaintiff, Jerry Oakes. Oakes sued the defendants, First State Bank of Lamar County and its president, B.F. Boyett, for breach of contract. Oakes alleged that he had an oral contract with Boyett for the bank to honor checks written by him regardless of whether funds existed to cover the checks. Oakes alleged that he relied upon this agreement, writing checks for over $11,000.00 for which no funds existed. As a result of the overdraft, Boyett refused to honor the checks and they were returned. Oakes was arrested and prosecuted for issuing worthless checks. He argues that he lost profits from his business, incurred legal fees, and suffered a loss of reputation in the community. Boyett argues that Oakes executed a release relieving the defendants of liability and, therefore, that no cause of action exists.
Oakes owned and operated a small sawmill business near Vernon, Alabama. In 1979 he met with Boyett and received a small loan from the First State Bank of Lamar County to finance improvements on his sawmill equipment. The Small Business Administration guaranteed the loan. Oakes also opened a checking account with the bank and an operating account for the sawmill. He later moved the sawmill's payroll account to the bank as well. Boyett made two additional loans to Oakes.
In July 1981, Oakes attempted to procure another loan from Boyett. Oakes had some low grade lumber he planned to sell. At the time of his request, the lumber would have sold for $90 to $110 a thousand board feet. However, if Oakes could have left the lumber to dry for 60 to 90 days, he could have sold it for $190 a thousand. Boyett refused to give Oakes another loan, Oakes said, but told him he could overdraft his account for $16,000. Boyett had allowed Oakes to overdraft his account on previous occasions.
Based upon the alleged agreement, Oakes issued checks greater than his account balance. The checks were presented to the bank. Oakes was notified that all but two checks had been paid and that he was charged $8.00 per check for the overdrafts. On August 8, 1981, however, the bank returned all the checks, totaling $11,204.92, for insufficient funds. On August 11, 1981, and August 17, 1981, Oakes made two deposits, $1,558.78 and $1,819.93, respectively to the payroll account. Upon each deposit the bank transferred the money from the payroll account to the operating account, without the knowledge or consent of Oakes. As a result, checks written to the employees were returned. It was a regular practice between Oakes and Boyett for the bank to transfer funds between the accounts. However, in the past, such transfers had occurred solely from the operating account to the payroll account at Oakes's request made by telephone. On prior occasions when the bank had returned checks unpaid, it had notified Oakes; however, on this occasion it did not.
As a result of the overdrafts, Oakes was prosecuted on six criminal charges for issuing worthless checks. He closed his business and sold most of his equipment in order to pay off his loans.
In March 1982, Oakes met with Boyett to discuss Oakes's outstanding loans. Oakes wanted to obtain another loan in order to reopen the sawmill. Boyett told Oakes that if Oakes and his wife would sign a release to him and the bank, he would go to *Page 39 
the Small Business Administration in order to obtain another loan for Oakes. The release, in pertinent part, provided that "in consideration of $10.00 and other valuable consideration," Oakes and his wife would release all the defendants from all claims of liability. Boyett argues that Oakes signed the release in exchange for Boyett's meeting with agents of the Small Business Administration in order to persuade them to stall foreclosure on Oakes's loans, not in order to obtain a new loan for Oakes.
Oakes and his wife signed the release form purporting to relieve Boyett and the bank from liability. On the following day, Boyett met with an officer of the Small Business Administration. Boyett furnished Oakes a list of demands the Administration made in order to stall foreclosure or for him to obtain a new loan. Oakes complied with the Administration's request, but he did not receive his loan, nor did the Administration stall foreclosure.
 I.
Boyett argues that the trial court erred when it denied his motions for summary judgment and for a directed verdict premised upon the release. Boyett argues that the release was duly executed and, therefore, that it completely bars Oakes's claim.
In reviewing the denial of summary judgment and directed verdict, we must determine whether the evidence, "when viewed in a light most favorable to the non-moving party, furnishes any support for the theory of the complaint and whether the judgment entered, based on the weight and sufficiency of the evidence presented is palpably wrong or manifestly unjust.Casey v. Jones, 410 So.2d 5 (Ala. 1981); Chavers v. NationalSecurity Fire Casualty Co., 405 So.2d 1 (Ala. 1981)."Interstate Engineering, Inc. v. Burnette, 474 So.2d 624, 627
(Ala. 1985). In this case, it is not disputed that there was consideration for the release. What is disputed is what the other valuable consideration was. Oakes testified that but for Boyett's promising to obtain another loan, he would not have signed the release. Boyett, on the other hand, argues that the promise to meet with the Small Business Administration in order to stall the foreclosure of Oakes's sawmill. Therefore, there was a genuine issue as to a material fact which precluded the trial court from entering a judgment as a matter of law or directing a verdict. Polytec, Inc. v. Utah Foam Products, Inc.,477 So.2d 295 (Ala. 1985).
 II.
For their second argument, defendants argue that the release bars Oakes's claim because, they say, Oakes failed to prove by clear and satisfactory proof that the release was fraudulently induced. A conflict existed as to exactly what representations were made for the procurement of the release. Whether fraudulent intent existed is a question for the jury. D.H.Holmes Dept. Store v. Feil, 472 So.2d 1001 (Ala. 1985); PurcellCo. v. Spriggs Enterprises, Inc., 431 So.2d 515 (Ala. 1983);State Farm Mut. Auto. Ins. Co. v. Borden, 371 So.2d 28 (Ala. 1979). However, the jury must base its determination on reasonable inferences from the facts. D.H. Holmes Dept. Store,supra; Purcell Co., supra. In this case it was reasonable for the jury to infer that Oakes signed the release in hopes of obtaining another loan in order to reopen his sawmill and that, but for this representation, Oakes would not have signed the release. We find no error with the jury's finding of fraud in the inducement.
 III.
Third, defendants argue that Oakes failed to seek a reformation of the release and is therefore bound by it. Reformation of the release would have been proper if it did not properly state the true intentions of the parties, § 8-1-2,Code of Alabama (1975). However, Oakes makes no argument that the release did not state the true intentions of the parties. He argues that Boyett fraudulently procured the release through his misrepresentations and that, in effect, the consideration failed. Therefore, reformation was not proper. *Page 40 
 IV.
Fourth, defendants argue that Oakes's claim is barred by the statute of limitations. They argue that Oakes had one year from the date he discovered the fraud to file his claim. Code of Alabama, 1975 § 6-2-39(5). However, this is a breach of contract action. The statute of limitations for fraud applies only to actions based upon fraud, not where fraud is pleaded as a defensive matter. Weeden v. Asbury, 223 Ala. 687, 138 So. 267
(1931); National Life Accident Ins. Co. v. Propst, 219 Ala. 437,122 So. 656 (1929). Oakes merely pleaded fraud in the procurement of the release, that Boyett claims barred Oakes's breach of contract action. Therefore, the statute of limitations for fraud is inapplicable to this case.
 V.
Last, defendants argue that the amount awarded to Oakes was excessive. The jury awarded Oakes $172,500.00. The defendants made a motion for new trial and in support of that motion argued that the amount awarded to Oakes was unconscionable. The amount of damages awarded to the injured party in a breach of contract action should be an amount sufficient to return the party to the position he would have occupied had the breach not occurred. Cobbs v. Fred Burgos Construction Co., 477 So.2d 335
(Ala. 1985). The assessment of damages is left largely to the discretion of the jury. Feazell v. Campbell, 358 So.2d 1017
(Ala. 1978). The jury's decision will not be disturbed unless the amount awarded is so excessive as to display passion or prejudice or other improper motive. Johnson Pub. Co. v. Davis,271 Ala. 474, 124 So.2d 441 (1960).
In the instant case, Oakes proved that Boyett breached the contract, that Oakes's checks were returned, that he received notices from the payees of the checks, and that as a result of these actions he was forced to close his sawmill business. As a direct result of the closure of his business, Oakes's salary was terminated. He also proved that he incurred criminal prosecution as a result of worthless check charges, and that this caused him to suffer financially and emotionally. Oakes, because of the loss of his income, applied for and began to depend upon food stamps and help from the Health Department. The jury assessed damages based upon the expenses incurred by Oakes, his loss of income, and mental anguish he suffered as a direct result of the breach. The defendants have not put forth any evidence that the decision of the jury was influenced by passion, prejudice, or any other improper motive. Therefore, we find no error in the award of damages.
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and STEAGALL, JJ., concur.