569 So.2d 369 (1990)
Betty ROBERTS
v.
PUBLIC CEMETERY OF CULLMAN, INC., and Doyle Roberson.
No. 89-169.
Supreme Court of Alabama.
September 28, 1990.
*370 S. Shay Samples and Richard D. Stratton, Hogan, Smith, Alspaugh, Samples & Pratt, Birmingham, for appellant.
W.J. McDaniel and Robert G. Boliek, Jr. of McDaniel, Hall, Conerly & Lusk, Birmingham, for appellees.
HORNSBY, Chief Justice.
Plaintiff Betty Roberts appeals from a judgment for the defendants, Public Cemetery of Cullman, Inc., and Doyle Roberson, the cemetery's sexton. This suit arose out of the burial of Roberts's deceased husband. Roberts's complaint contained three counts, alleging: (1) that the defendants had acted negligently or wantonly (a) in failing to have the grave of her deceased husband acceptable for burial, by allowing it to contain water, (b) in burying her deceased husband in the wrong grave, and (c) in failing to maintain the grave site after burial; (2) that the defendants breached their contract to inter her deceased husband at the grave site owned by her; and (3) that the defendants' conduct involving the burial amounted to intentional infliction of emotional distress (the tort of outrageous conduct or "outrage"). At the close of the plaintiff's case, the trial court dismissed Roberson as a defendant.[1] The trial court directed verdicts for the cemetery on Roberts's contract claim and on her outrage claim; the jury then returned a verdict for the cemetery on her claims of negligence and wantonness.
On appeal, Roberts raises five issues: (1) whether the trial court erred in denying her motion for new trial; (2) whether the trial court erred in not submitting her contract claim to the jury; (3) whether the trial court erred by failing to direct a verdict in her favor on her negligence claim; (4) whether the trial court erred by directing a verdict for the cemetery on her outrage claim, and (5) whether the trial court erred in excluding testimony of statements made by Roberson to Roberts's son, Larry Roberts, who was not a party to the lawsuit. Because this lawsuit was filed after July 11, 1987, the "substantial evidence rule" applies. Ala.Code 1975, § 12-21-12.
The basic facts are as follows: The plaintiff and her husband, J.O. Roberts, purchased from the corporate defendant two grave sites at its cemetery, known as the Public Cemetery of Cullman; those grave sites were located in Lot # 134, Block # 802. J.O. Roberts died on July 2, 1987. Funeral services were held on July 5, with burial to occur at 2:00 P.M. The grave had been dug on the morning of July 5. It had rained the day before, but it did not rain the day of the funeral. Because of seepage into the grave, Roberson pumped water out of the grave two times on the morning of the funeral, but he did not check for additional seepage after the second pumping at 10:00 A.M. Winford Chamblee, not an employee of the cemetery, arrived to install the top ground vault at the grave at 11:30 A.M. After setting the vault on boards over the grave, Chamblee pumped water out of the grave.
The graveside service occurred without incident. One of the pallbearers said that he noticed water in the grave, and that when the casket and vault were lowered into the grave, he saw water come up around the sides of the vault. The plaintiff was not present at the grave while the casket and vault were being lowered; she had returned to her car and was waiting to return to the grave site after the vault and casket had been lowered. Larry Roberts said that he saw the water rise around the lid of the vault and that he told the workers to stop; he then went to the cemetery office to get Roberson. Roberson went to the grave site and began pumping water out of the grave. The burial was not completed until a half hour after the first attempt *371 to lower the vault. The plaintiff saw the pumping operation from her car, but at no time did she ever see water in the grave. As the plaintiff was returning to the grave, Roberson stopped his tractor near her and shouted something at her, but she did not recall anything that was said. At some time after the burial, Roberson said to Larry Roberts, "I had that grave ready, buddy. I am not God. I can't control the rain." The plaintiff did not hear Roberson make these comments.
The plaintiff visited her husband's grave during July, August, and September 1987 and noticed that the grave was sinking and that no sod had been placed on the grave. When she asked Roberson to fix these problems, he told her that the cemetery had buried her husband in the wrong grave. He had been buried in Lot # 133, a plot owned by another family, rather than Lot # 134, the plot owned by the plaintiff. The plaintiff refused to agree to have her husband reburied in the proper lot, and the cemetery made arrangements to have another body moved so that the plaintiff could be given title to Lot # 133. Prior to the plaintiff's filing suit, the cemetery had given her title to both Lot # 133 and Lot # 134.

I.
Roberts argues that the trial court erred in denying her motion for a new trial, claiming that the jury's verdict on the negligence and wantonness claims was contrary to uncontroverted evidence that the cemetery was negligent in burying her husband in the wrong grave.
The standard for the review of a denial of a new trial motion was set forth in Davis v. Ulin, 545 So.2d 14, 15 (Ala.1989):
"Jury verdicts are presumed correct, and this presumption is strengthened by the trial court's denial of a motion for new trial. Therefore, a judgment based on a jury verdict will not be reversed unless it is `plainly and palpably' wrong. Ashbee v. Brock, 510 So.2d 214 (Ala. 1987)."
While the cemetery admitted negligence in the burying of Roberts's husband in the wrong grave, it did not admit that the plaintiff was entitled to damages. There was no evidence presented of any monetary loss suffered by the plaintiff because her husband was buried in the wrong grave. Roberts argues that the cemetery's admission of negligence left nothing for the jury to resolve, but that argument does not take into consideration the fact that damages arising out of that negligence were disputed, and thus, that a jury question was presented. A claim alleging negligence involves more than proof of negligence (which is made up of proof of the elements of duty and breach of that duty); it also requires proof of the elements of proximate cause and injury. Rutley v. Country Skillet Poultry Co., 549 So.2d 82, 85 (Ala.1989). The fact that the cemetery admitted negligence does not mean that it admitted proximate cause and damages as well; in this case, resolution of those two elements was properly left to the jury. We cannot say that the jury's verdict was plainly and palpably wrong.

II.
Roberts also argues that the trial court erred in not submitting her contract claim to the jury. She claimed that the cemetery breached the burial contract by burying her husband's body in the wrong grave. The trial court explained its reason for not sending the plaintiff's contract claim to the jury:
"[T]he contract itself does not provide expressly that the defendants will use due care in performing the contract. There is no express provision for that in the contract. And therefore, the plaintiff is not entitled to elect at this point whether to proceed in contract or in tort. I think, if she did the plaintiff would probably have to make an election as to whether to proceed on a contract or proceed on a tort count....
"....
"As I recall the law, when you have a contract that does not expressly provide for due care the law ... implies a duty to use due care, but does not imply that within the contract.... So I think that *372 the only remedy that you have available to you under these facts is to proceed in tort and that would be that the contract was performed, but was performed in a negligent or wanton manner and will be entitled to go to the jury with regard to damages on those particular claims."
This Court, however, has recognized that claims for tortious conduct and for breach of contract may be maintained in a single suit. See Eidson v. Johns-Ridout's Chapels, Inc., 508 So.2d 697 (Ala.1987). There we stated:
"We can appreciate the dilemma faced by the learned trial judge, because this Court has had difficulty agreeing on cases involving the question of whether an action is ex delicto or ex contractu, but we hold that plaintiffs produced at least a scintilla of evidence that the defendants made specific promises to plaintiffs and then failed to perform as promised."
508 So.2d at 701. The Court has long recognized that, while a defendant's failure to exercise reasonable care or to perform the act promised in a contract may give rise to an action ex delicto, such failure also gives rise to an action ex contractu when there is a breach of promise. Vines v. Crescent Transit Co., 264 Ala. 114, 85 So.2d 436 (1956). Eidson relied on Waters v. American Casualty Co., 261 Ala. 252, 73 So.2d 524 (1954), wherein an insured had brought an action against its liability insurer. The Court stated:
"This Court has long since taken the position that under certain circumstances, for the breach of a contract there may be either an action of assumpsit or one in tort. That means that when there is a contract expressed to exercise reasonable diligence in the performance of an act, or when there is a specific contract to do an act, a failure to exercise reasonable diligence on the one hand or to do the act on the other gives rise to an action of assumpsit. But when the contract is to exercise reasonable care to perform the act, a failure to exercise such reasonable care may be redressed by either assumpsit or in tort. When the contract does not in terms require reasonable care in doing the act stipulated to be done, the law imposes a dutybut does not imply a contractto exercise due care in doing the act; and, therefore, when negligence exists in doing that act an action in tort only is available because there is no express or implied contract which is breached."
Id. at 258, 73 So.2d at 528-29 (citations omitted). See also Combined Services, Inc. v. Lynn Electronics Corp., 888 F.2d 106 (11th Cir.1989) (Alabama law permits plaintiff to recover judgment in actions for breach of contract and fraud).
Here, the trial court ruled that Roberts had to proceed under the tort claim and not under the contract claim, because there was no contract provision stating that the cemetery would use due care. However, there was clearly a breach of the agreement to bury the plaintiff's husband in the specific grave owned by the plaintiff; the defendant did not perform the act promised in the contract. Therefore, the plaintiff was entitled to present her contract claim to a jury, and the trial court's directed verdict on this claim was in error.
We note that the jury's findings against the plaintiff on the negligence claim could be read to indicate that the plaintiff was not entitled to damages. However, in light of the fact that damages under the breach of contract claim were never considered, we do not hold, as a matter of law, that ex contractu damages are not recoverable.

III.
Roberts argues that the trial court erred in not directing a verdict in her favor on her negligence count. As we determined in part I, there was a jury question on her negligence claim. Therefore, the failure to direct a verdict on this claim was not error.

IV.
Roberts contends that the trial court erred in directing a verdict for the cemetery on her outrage claim. This Court recently stated in Green Tree Acceptance, Inc. v. Standridge, 565 So.2d 38, 44 (Ala. 1990):

*373 "This Court set out the elements of the tort of outrage in American Road Service Co. v. Inmon, 394 So.2d 361 (Ala. 1981). For a plaintiff to recover under the tort, he must demonstrate that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it. Inmon, supra, at 365. In order to support a cause of action for the tort of outrage, the conduct complained of must be so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society. McIsaac v. WZEW-FM Corp., 495 So.2d 649, 651 (Ala.1986)."
The defendant's conduct in this case is clearly not so extreme in degree as to go beyond all possible bounds of decency. The evidence showed that seepage of water into graves after a rain is a common problem, and that the defendant took actions to remedy that problem. As to the allegations that the cemetery was not maintaining the grave properly, the evidence showed that there was a drought during that period and that all of the lots in the cemetery were suffering from the effects of that drought. Further, there was no evidence that the cemetery did, or did not, do anything in regard to this grave different from what it did in regard to all the other graves at the cemetery.
Therefore, the trial court did not err in directing a verdict for the cemetery on Roberts's outrage claim.

V.
Roberts's last argument is that the trial court erred in not allowing Larry Roberts to testify as to the statements made by Roberson to him. These statements were clearly hearsay, but Roberts argues that they were not offered to prove the truth of the matter but rather to prove Roberson's state of mind and intent in regard to her claims for outrage and wantonness. As held above in part IV, Roberts's claim for outrage was properly withheld from the jury. As for Roberts's claim that the cemetery was wanton in its preparation and maintenance of the grave, we cannot see how Roberson's statements"I had that grave ready, buddy. I am not God. I can't control the rain"have any relevance to that claim. Rulings as to the admissibility of evidence rest largely within the discretion of the trial judge and will not be disturbed on appeal in the absence of an abuse of discretion. Russellville Flower Craft, Inc. v. Searcy, 452 So.2d 478, 480 (Ala.1984). We find no abuse of discretion here.
For the foregoing reasons, we affirm the trial court's judgment as to all of the claims, except the claim alleging breach of contract. As to that claim, the judgment is reversed and this cause is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
JONES, SHORES, ADAMS, STEAGALL and KENNEDY, JJ., concur.
MADDOX and HOUSTON, JJ., concur in part and dissent in part.
MADDOX, Justice (concurring in part, and dissenting in part).
I concur with that part of the majority opinion that affirms the trial court's judgment concerning Roberts's claims of negligence, wantonness, and outrage. However, I must dissent from that portion of the opinion that reverses the trial court's directed verdict for the defendant on Roberts's contract claim.
Cases of this kind pose a dilemma, and I would argue that ordinarily a contract claim should go to the jury,[2] but even assuming *374 that Roberts had presented evidence of actual damages due to a breach of the contract,[3] I am of the opinion that the trial court's failure to submit the contract claim to the jury was harmless error, if error at all. In instructing the jury, the trial judge arguably gave back some of what his prior decision took away; the trial judge's jury instruction included the following:
"To begin with, ladies and gentlemen, let me say that a contractyou have heard that term mentioned here on numerous occasions, a contract is an agreement between two or more persons or parties based upon a valid consideration to do or refrain from doing a particular lawful act. There was admittedly a contract between the plaintiff, Betty Roberts, and the defendant, Public Cemetery of Cullman, Inc. That contract is in evidence. The law implies that a contract with the nature that we have in this case would be carried out or performed by the use of ordinary care as may be required under the circumstances.
"Now, the plaintiff alleges that the defendant was negligent in the performance of its duties under this contract. And also that the defendant was guilty of wanton conduct in carrying out its obligations under this contract."
Although the jury was ultimately instructed to return verdicts on the counts of negligence or wantonness, the jury was also essentially instructed that a contract existed and that the contract contained an implied duty of due care. The jury was further instructed to award, if appropriate, the very damages claimed under the contract theory. The jury found that the defendant did not negligently or wantonly breach the duties imposed upon it by the contract and thereby damage the plaintiff; therefore, the failure to submit the breach of contract claim was not prejudicial error, and under Rule 45, Ala.R.App.P., the judgment of the trial court should not be reversed. Because the jury found that the defendant had not breached the duties imposed by the contract, I cannot see how the failure to instruct the jury on breach of that very same contract "injuriously affected the substantial rights" of the plaintiff. Under Rule 45, I would affirm the trial court's judgment as to this claim as well.
HOUSTON, Justice (concurring in part, and dissenting in part).
I would affirm the trial court's judgment as to all claims.
In Blumberg v. Touche Ross & Co., 514 So.2d 922, 927 (Ala.1987), this Court held:
"In Alabama, one who contracts with another and expressly promises to use due care is undoubtedly liable in both tort and contract when his negligence results in injury to the other party. He is liable in contract for breaching an express promise to use care. He is liable in tort for violating the duty imposed by law on all people not to injure others by negligent conduct. The injured party has the choice of remedies when a contract contains an express promise to use due care. Eidson v. Johns-Ridout's Chapels, Inc., 508 So.2d 697, 701 (Ala. *375 1987); Comment, Contractual Recovery for Negligent Injury, 29 Ala.L.Rev. 517, 524-25 (1978)."
I can find no express promise to use due care in any document in the record. The only express contract that I can find consisted of a "certificate of purchase," an "order for interment," a receipt for that interment, and rules and regulations of the Public Cemetery of Cullman. None of these documents contains an express undertaking to use due care. Such a duty will not be implied so as to give rise to a contractual remedy, in the absence of an express term. See Blumberg v. Touche Ross & Co., at 927, n. 4 (citing Garig v. East End Memorial Hosp., 279 Ala. 118, 182 So.2d 852 (1966)).
NOTES
[1] Roberts does not contest on appeal the dismissal as to Roberson.
[2] This Court has recognized that claims for tortious conduct and for breach of contract may be maintained in a single suit. Eidson v. Johns-Ridout's Chapels, Inc., 508 So.2d 697 (Ala.1987). In that case, involving the shipment of a body, this Court stated:

"We can appreciate the dilemma faced by the learned trial judge, because this Court has had difficulty agreeing on cases involving the question of whether an action is ex delicto or ex contractu, but we hold that plaintiffs produced at least a scintilla of evidence that the defendants made specific promises to plaintiffs and then failed to perform as promised."
508 So.2d at 701. This Court recognized that a defendant's failure to exercise reasonable care or to do the act promised in a contract may give rise to an action for breach of contract.
[3] Although Roberts provided substantial evidence that there was a contract to bury her husband's body in a specific grave and that that contract was breached, Roberts presented no evidence of any monetary damages. A plaintiff cannot recover for emotional distress and similar damages in a contract action. "Absent proof of actual damage or injury, there can be no recovery for breach of contract." Purcell Co. v. Spriggs Enterprises, Inc., 431 So.2d 515, 523 (Ala.1983). Roberts offered no proof of any actual damages caused by this breach. Further, the damages awarded in a breach of contract action should return the injured party to the position he would have occupied had the breach not occurred. Boyett v. Oakes, 518 So.2d 37, 40 (Ala.1987). Here, the cemetery gave Roberts the additional lot and had to remove another body in order to do so. Thus, Roberts's husband was buried, and she owned two lots rather than the one she had prior to the breach. There was no evidence that she was in a worse position after the breach.