WRIGHT, Retired Appellate Judge.
Milton Harvey Brown IV (“Harvey”); Juñe D. Brown (“Julie”); Diane B. Duffle (“Diane”); and Donald Lewis Brown (“Donald”), the children of Milton Harvey Brown III, sued SCI Alabama Funeral Services, Inc. (“SCI Alabama”); and John Lowe, its location manager, claiming abusive process, tortious interference with a contract, outrageous conduct, negligence, and wanton and/or intentional conduct in the burial of their father. The only count that the trial court allowed to go to the jury was the negligence count. The jury returned a verdict in the amount of $45,000 in favor of the Brown children. Following SCI Alabama’s post-judgment motion, the verdict was reduced to $37,000. SCI Alabama and John Lowe appeal.
Milton Harvey Brown III (“the decedent”) died in Jefferson County on July 2, 1997. On July 3, 1997, Elizabeth Whep-ley-Brown, the alleged common-law wife of the decedent, notified Harvey of his father’s death. Harvey then notified his other siblings. On July 5, 1997, Harvey went with Elizabeth to SCI Alabama, to assist her in making arrangements for the disposition of the body. Elizabeth and Harvey had requested that the decedent’s mother and his siblings attend the meeting. They failed to appear. At that time Harvey and Elizabeth determined that the body would be cremated.
A memorial service was held on July 6, 1997. Harvey and Diane were present, but Julie and Donald were unable to attend. Prior to and after the service, SCI Alabama and Lowe informed Harvey, Diane, and Elizabeth that they would need Elizabeth’s and the four children’s signatures in order to authorize the cremation. Harvey and Diane executed an authorization on that day prior to leaving the funeral home. Authorizations were faxed to Julie in North Carolina and to Donald in California. Julie’s and Donald’s authorizations were received by SCI Alabama on July 8, 1997.
Immediately following the service, Mildred Porterfield, the decedent’s mother; and Gary Brown; Barbara Carrington; and Joyce Brown, the decedent’s siblings, objected to the plans for cremation. Because of the dispute, Lowe sought counsel from the corporate attorney in Texas. The attorney advised Lowe that the company policy was that when one family member disagrees with the planned disposition of the body, all family members would be required to reach an agreement as to the disposition of the body or the funeral home would not act without a court order. Lowe informed the decedent’s brother that if he obtained a court order, they could dispose of the body by burial rather than cremation.
Sometime the following week, Elizabeth informed Harvey that SCI Alabama would not cremate the body. On July 15, 1997, Elizabeth, Harvey, and Diane executed *100 authorizations to release the body to Alabama Cremation Center. Donald and Julie returned their authorizations by facsimile on July 17, 1997.
On July 17, 1997, the decedent’s brother obtained an emergency order from the Circuit Court of Coffee County for the immediate burial of the decedent and an order restraining Elizabeth from interfering with the burial. On the afternoon of July 17, 1997, the decedent’s mother contracted with SCI Alabama for the burial of the decedent to be performed on July 18, 1997, at 3:00 p.m. On July 18, 1997, Elizabeth and the decedent’s children attempted to have the Coffee County order rescinded and the case transferred to El-more County, where venue was proper. The Coffee County order was rescinded, and the case transferred to Elmore County. However, SCI Alabama buried the decedent prior to receiving that order.
Elizabeth and the children subsequently filed a motion for emergency relief for the exhumation of the decedent’s body and possession of the body. At that time Elizabeth and the children also filed the present action against SCI Alabama and Lowe.[1] On August 7, 1997, an emergency hearing was held to determine which party was entitled to the right of disposition of the decedent’s body. The court determined that the children had the right of disposition and enjoined all other parties from interfering with the disposition.
The record reflects that the decedent was imprisoned in Florida and divorced from the children’s mother in 1979. Only Harvey had contact with his father during the years after the imprisonment and divorce. There was evidence that the father had abandoned the children.
SCI Alabama and Lowe initially assert that the court erred in refusing to grant a mistrial. Prior to trial, SCI Alabama and Lowe filed a motion in limine to prohibit the children from testifying about punitive damages. The trial court granted the motion. During Donald’s testimony, the following transpired:
“Q. Do you understand there’s one count remaining:
“A. Right.
“Q. Can you tell me how much that complaint is?
“A. I believe it’s 2.5 million.
“Q. That’s for all four of you children; is that correct?
“A. Right.
“Q. Is it your contention that that would make you whole?
“A. No. It would — -There’s no way you can, you know, have that sense of denial who you are that we had. There’s no way that would do it.. Hopefully, it would stop them from doing it to other people in the future.”
SCI Alabama and Lowe objected and moved for an instruction. After a brief recess, SCI Alabama and Lowe then moved for a mistrial. Following argument of counsel, the following occurred:
“THE COURT: I think the question as to whether they’re entitled to a mistrial is very close. I think in the event the plaintiffs prevail in this case and get a verdict, say a sizable verdict, I think there is a substantial probability of a reversal.
“[COUNSEL FOR SCI ALABAMA AND LOWE]: Judge, don’t do that to us. Don’t put us through four more days of trial. That’s unfair to them and that’s unfair to us.
“THE COURT: It can dispose of the case. If we go forward with the case and it’s a defense verdict, then there was no prejudice, apparently. If there’s a plaintiffs verdict in the case, I think that the case will be reversed, because I *101 think I’m in error in not granting a mistrial. I say that on the record.”
(Emphasis added.)
Upon further consideration, and after consultation with a senior circuit court judge, the trial judge then determined that a mistrial was not warranted and that when the jury returned, he would instruct the jury concerning the inappropriate testimony. The trial court gave the following instruction:
“THE COURT: Ladies and gentlemen, let me talk to you for just a minute. The witness was testifying a few minutes ago, and you all recall that. His last answer to the last question that was asked was not responsive to the question; that is to say, it didn’t answer the question that was asked. It further violated an order of this court, an order that I entered yesterday morning and that counsel for the parties was aware of. And the court takes very seriously violations of its orders. Therefore, I’m instructing you at this time to completely and totally disregard the last answer that the witness gave before we took our unscheduled break. I want to ask each and every one of you if you will be able to do that. I want to ask you individually-
“(Whereupon each juror was asked individually and each responded in the affirmative.)”
Prior to deliberations, the court further instructed the jury regarding punitive damages:
“THE COURT: ... This is not a punitive damages case. You may not award punitive damages in this case. The only damages that you may award are those for compensatory damages to the extent you believe compensatory damages should be awarded.”
The jury returned a verdict in favor of the children for $45,000 in compensatory damages. SCI Alabama and Lowe argue that this amount represents punitive damages because, they say, the evidence proved that the children suffered no out-of-pocket expenses and very little emotional stress. They argue that, in view of the award, Donald’s statement was prejudicial.
The trial court has much discretion in considering a motion for mistrial. Walker v. Cork, 619 So.2d 1336 (Ala.Civ.App.1993). This court will not reverse a trial court’s denial of a motion for mistrial, based on a party’s improper statement, unless it appears from the entire record that the statement involved was prejudicial to the complaining party, either as to the result or the amount of damages assessed. Id.
We find no prejudicial effect in this instance. The award for emotional distress is justified in eases involving the mishandling of a dead body, and the jury is authorized to look to the circumstances conducive to such suffering. Levite Undertakers v. Griggs, 495 So.2d 63 (Ala.1986). The children testified to the emotional distress caused by SCI Alabama and Lowe in refusing to honor their disposi-tional wishes. Furthermore, the court acted properly in excluding the testimony and instructing the jury to disregard it. The jury award was not excessive, and the court properly affirmed the award by not substituting its judgment for that of the jury.
SCI Alabama and Lowe next assert that the trial court erred in denying their motions for summary judgment, directed verdict, and for judgment notwithstanding the verdict.
Motions for summary judgment and motions for directed verdict are procedural devices by which one party tests the sufficiency of the other party’s evidence. Rule 56, Ala. R. Civ. P.; Liberty Nat’l Life Ins. Co. v. Allen, 699 So.2d 138 (Ala.1997). Similarly, motions for a judgment notwithstanding the verdict simply permit the trial court to revisit its earlier decision in denying a motion for directed verdict. Alabama Power Co. v. Williams, 570 So.2d *102 589 (Ala.1990). The ultímate question as to these motions is whether the nonmovant has presented sufficient evidence to allow submission of the case or issue to the jury for a factual resolution. The standard of review applicable to these motions is the substantial evidence rule. Liberty Nat’l Life Ins. Co.
To meet the burden of proof that a defendant has been negligent, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of injuries to the plaintiff. Martin By and Through Martin v. Goodies Distribution, 695 So.2d 1175 (Ala.1997).
SCI Alabama and Lowe argue that the children could not establish a duty because there was no contract between the parties. Actions involving the mishandling of a dead body can be maintained in tort without the necessity of a breach of contract count. Eidson v. Johns-Ridout’s Chapels, Inc., 508 So.2d 697 (Ala.1987). Furthermore, §§ 34-13-10 and -56(a)(2)(n), Ala.Code 1975, charge licensed funeral service providers with the knowledge of the “next of kin” for purposes of disposition of a dead body. That statute imposes on the service providers criminal and professional sanctions for failing to act in accordance with the wishes of the next of kin. In this instance, the children were the next of kin, and SCI Alabama and Lowe breached their duty to act in accordance with the wishes of the children.
SCI Alabama and Lowe argue that even if they did owe a duty to the children, there was no breach of that duty because they were acting pursuant to advice of counsel and pursuant to a court order. The advice of counsel is not an absolute defense. It is only a factor for the trial court to consider when deciding whether there is sufficient evidence to go to the jury. Chavers v. National Security Fire & Casualty Co., 405 So.2d 1 (Ala.1981). In this case, the advice came from a corporate attorney in Texas. That attorney testified that his advice was based on the application of Texas and Florida law. It is apparent that SCI Alabama and Lowe failed to seek or to apply Alabama law. Furthermore, the Coffee County court order argument disregards the conduct of SCI Alabama and Lowe from the time the body was delivered to the date the court order was entered. The conduct complained of occurred during that eight to ten days, not after the order was entered.
SCI Alabama and Lowe contend that the children failed to present any evidence that they were injured by SCI Alabama and Lowe’s actions. They assert that the children had no out-of-pocket expenses and that they could not have suffered mental distress because they had not seen their father for approximately 16 years. The children testified extensively as to the mental distress that they suffered as a proximate cause of SCI Alabama and Lowe’s breach of duty to act in accordance with their wishes. The fact that the children had no contact with their father is of no significance in this instance, particularly in view of the fact that the children testified that they were abandoned by their father.
In reaching its decision to present the issue of negligence to the jury, the court stated, outside the presence of the jury:
“I think the jury could find negligent conduct on the part of the funeral home as to the Brown Children after the children signed the forms, particularly the cremation forms.”
The trial court did not err in submitting the negligence count to the jury for its deliberation.
SCI Alabama and Lowe finally assert that the court erred in denying its motion for new trial or, in the alternative, motion for remittitur.
*103 A jury verdict may not be set aside or a remittitur ordered unless the verdict is flawed. CSX Transp., Inc. v. Long, 703 So.2d 892 (Ala.1996). A judgment based on a jury verdict and sustained by the denial of post-judgment motions for a new trial will not be reversed unless it is plainly and palpably wrong and unjust. Motion Industries, Inc. v. Pate, 678 So.2d 724 (Ala.1996). We find no error in the court’s denial of SCI Alabama and Lowe’s post-judgment motions.
The judgment of the trial court is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. Charles Wright while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
AFFIRMED.
ROBERTSON, P.J., and YATES and MONROE, JJ., concur.
CRAWLEY, J., concurs in the result.
THOMPSON, J., dissents.

. The jury returned a verdict for SCI Alabama and Lowe and against Elizabeth. Elizabeth's claims, therefore, are not at issue on this appeal. The children and Elizabeth also in-eluded the decedent's mother and siblings in their complaint. However, they eventually settled with their grandmother and released the siblings from the action.