These negligence cases arose from a single accident and have been consolidated on appeal. Appellants Linda Ables and Wilma Hodge were injured on the premises of their employer, Sunbelt Wood Components ("Sunbelt"), when a cart used to load lumber broke apart, causing a pile of lumber to fall on them. They and their husbands brought claims against United States Fidelity and Guaranty Company ("USF G"), Sunbelt's workmen's compensation insurance carrier, alleging negligence on the part of USF G in its inspection of the plant prior to undertaking to insure Sunbelt. Following discovery, the trial court granted summary judgment for USF G, *Page 230 
and the Ableses and Hodgeses have appealed.
The appellants allege that USF G undertook a duty to inspect Sunbelt's premises and that Linda Ables and Wilma Hodge were injured as a result of USF G's negligence in performing that duty, and they allege particularly that USF G failed to note that certain carts used in the plant to transport lumber were poorly built and posed serious hazards. USF G argues that it undertook no such duty for the benefit of Sunbelt or its employees, but rather inspected the plant several months before the insurance policy was issued merely for its own benefit in deciding whether to write Sunbelt's workmen's compensation coverage. Furthermore, USF G never reported to Sunbelt regarding any "hazards" noted, nor did it make recommendations to Sunbelt as a result of the inspection. Therefore, USF G argues that neither Sunbelt nor its employees should have relied on the inspection by USF G as an indication of the safety of the plant.
On the other hand, plaintiffs produced certain evidence which, they maintain, precluded summary judgment.
H.L. McMeans, a USF G representative, conducted the "prospect survey" of the building in which the carts of the type in question were located. McMeans explained that there were essentially two types of surveys made of the premises — a prospect survey and an ongoing loss control survey. According to him, a prospect survey was made to get underwriting information, although the survey would also identify major hazards on the site for the purpose of underwriting. He added that in the course of prospect surveys, he "might or might not" make recommendations to prevent losses. Apparently, no such recommendations were made to Sunbelt in this instance. McMeans's report, submitted as plaintiff's exhibit one, included a description of equipment and its operation. The report indicated that no imminent danger or major hazards were noted during this inspection.
Plaintiff also submitted the affidavit of Edward L. Delaney, a self-employed safety consultant. After establishing that he had reviewed the evidence, Delaney expressed his opinion that the inquiry conducted by USF G had been improperly performed. According to Delaney, the general insurance industry practice is to make recommendations on hazards during a "prospective survey" and to forward those to the insured when the coverage is written. Delaney further stated that a proper inquiry in this instance would have revealed that the carts in question were of poor design for their usages and entailed risks of serious injury to workers operating them and necessitated safe working procedures.
In Adams v. Travelers Ins. Co., 494 So.2d 401, 408 (Ala. 1986), this Court quoted from Barnes v. Liberty Mutual Ins.Co., 472 So.2d 1041, 1042 (Ala. 1985):
 "Common law liability to third parties can arise from the negligent performance of even a voluntary undertaking, Beasley v. MacDonald Engineering Co., 287 Ala. 189, 249 So.2d 844
(1971). Under current Alabama law, a worker's compensation carrier may be liable when it voluntarily undertakes to inspect an employer's premises for safety. Fireman's Fund American Insurance Co. v. Coleman, 394 So.2d 334, 388 (Ala. 1980). However, in a suit of this nature, a plaintiff bears the burden of proving (1) that the defendant had a duty, or assumed a duty by voluntarily undertaking the inspection; (2) the scope of that duty; (3) whether the duty was breached; (4) whether there was damage or injury; and (5) whether the injury was proximately caused by that breach. Fireman's Fund, 394 So.2d at 349
(Jones, J., concurring); see also, United States Fidelity Guaranty Co. v. Jones, 356 So.2d 596
(Ala. 1977)."
And, in Armstrong v. Aetna Ins. Co., 448 So.2d 353, 355 (Ala. 1983), this Court concluded:
 "The tort of negligent inspection is based on the theory that when an insurer undertakes the performance of the duty owed by the insured to a third party, the insurer may be liable to that third-party *Page 231 
if the third-party was injured as the proximate result of the insurer's failure to exercise reasonable care in said performance. Restatement (Second of Torts § 324A (1976). Thus, when an insurer undertakes to inspect an insured employer's premises for safety, it assumes the duty of the insured employer to provide a safe place for its employees to work. Beasley v. MacDonald Engineering Co., 287 Ala. 189, 249 So.2d 844
(1971)."
The Court added:
 "When a workmen's compensation carrier inspects its insured's work place, it does so to promote its interest in underwriting, rating, and loss prevention with respect to the policy of insurance. The duty of care to third persons which it assumes, therefore, must be limited. While an action for negligent inspection sounds in tort and is, therefore, not based on the contract of insurance per se, the class of persons who are the intended beneficiaries of the inspection is limited to those covered by the policy. Since the duty in question is one which is gratuitously assumed by the insurer, we opine that the scope of the duty should be concomitant with the class of persons covered by the policy."
A review of the record establishes some evidence (1) that the defendant, USF G, assumed a duty by voluntarily undertaking the inspection in question; (2) that the scope of the duty included a survey of machinery and equipment in the area in which the lumber carts were located; (3) that the duty was owed to those employees of the class who would be operating those carts; (4) that this duty was breached by the failure to recognize the unsafe character of the carts; and (5) that injury occurred as a proximate cause of the breach of that duty.
The fact that the "prospect survey" was made for the paramount purpose of furnishing underwriting information to the insurance carrier does not control here, for it is clear that safety in plant operations was a factor in that survey. As recognized in Armstrong, supra, it was to USF G's interest in writing this workmen's compensation policy to apply a proper rating to its risk and to prevent loss by observing any hazardous operations. USF G's agent, McMeans, noted in his inspection report in some detail the nature of the manufacturing process and the use of the equipment. It is not insignificant that thereafter USF G issued the policy. Indeed, McMeans testified by deposition that he might make recommendations to prevent losses, and, according to witness Delaney, such was the insurance industry's general practice.
Thus, there is evidence that this inspection was to some degree a "safety" inspection, and that it failed to reveal a condition as to which observation and communication would likely have prevented injury to the plaintiffs. Accordingly, summary judgment was inappropriate. Rule 56, A.R. Civ.P. SeeClardy v. Royal Ins. Co., 495 So.2d 58 (Ala. 1986) (when evidence presents question of fact, summary judgment is inappropriate).
Let the judgment be reversed and the cause be remanded for further proceedings.
REVERSED AND REMANDED.
JONES, ALMON, ADAMS and HOUSTON, JJ., concur.
MADDOX and SHORES, JJ., dissent.
TORBERT, C.J., and STEAGALL, J., not sitting.