These appeals arise from a single wrongful death action brought by the dependent children of Arlene Elizabeth Mallory. Ms. Mallory was employed as a coal tester at Alabama Power Company's Gorgas Steam Plant. A 44-ton dump truck and trailer, while dumping a load of coal at the Gorgas facility, overturned on Ms. Mallory, fatally injuring her.
 STATEMENT OF THE CASE
Heather and Amy Mallory, through their guardian, Truman H. Hocutt ("plaintiffs"), filed a wrongful death action. It was tried before a jury against four of the originally named defendants on various theories of liability: (1) against Larry Wallace, the driver of the coal truck, on claims of negligent and/or wanton misconduct in the maintenance and operation of the truck; (2) against Lee Creel, d/b/a Creel Trucking *Page 968 
Company ("Creel"), on claims of negligent and/or wanton performance of his contract to transport coal to the Gorgas Steam Plant; (3) against Hobbs Trailers ("Hobbs"), a division of the Fruehauf Corporation, under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") (Ala. Code 1975, § 6-5-501 et seq.), on claims of negligent and/or wanton manufacture of the truck's trailer; and (4) against Thomas Welding and Repair, on claims of negligent and/or wanton performance of repair work done on the dump truck prior to the accident.
Each defendant filed a motion for a directed verdict at the close of the plaintiffs' evidence and again at the close of all the evidence. The motions were denied.
The jury returned a verdict for the plaintiffs and against defendants Wallace, Creel, and Hobbs, and awarded damages in the sum of $500,000. However, the jury found against the plaintiffs and in favor of defendant Thomas Welding and Repair. The trial court entered its judgment based on the jury's verdicts.
Defendants Wallace, Creel, and Hobbs filed motions for judgment notwithstanding the verdict, or, in the alternative, for a new trial. The trial court, in a written order, denied the motions of defendants Wallace and Creel, but granted defendant Hobbs's motion for JNOV. In that same order, the trial court, pursuant to Rule 50(c), A.R.Civ.P., conditionally granted Hobbs's motion for a new trial, in the event the order granting JNOV was reversed, on the following grounds: (1) That the plaintiffs had failed to prove that the trailer was in substantially the same condition at the time of the accident as it was when it left Hobbs's control; (2) that the plaintiffs had failed to prove that the trailer was being applied to its intended use at the time of the accident in question; and (3) that the plaintiffs' exhibits 15, 16, and 17 (all patents) were improperly admitted into evidence over proper objections by the defendant.
The plaintiffs appeal from the trial court's order granting the JNOV and, conditionally, a new trial to Hobbs. Wallace and Creel appeal from the judgment on the jury verdict in favor of the plaintiffs and from the order denying their post-judgment motions for JNOV and for new trial.
 STATEMENT OF THE FACTS
On February 7, 1984, Arlene Elizabeth Mallory, an employee of Alabama Power Company, was working as a coal tester at Alabama Power's Gorgas Steam Plant in Walker County. Ms. Mallory's job was to check the driver's dump-weight ticket and then to take three samples of coal from an incoming load to determine the quality of the coal. Coal testers stand alongside the rear of the truck while it is dumping the coal and use a shovel with a long handle to collect a sample at the beginning of the dumping process, a sample in the middle, and a sample at the end.[1]
On the day of Ms. Mallory's death, two testers were working at the coal pile site, and two trucks came in at the same time. Ms. Mallory went to the truck of defendant Wallace and checked his dump-weight ticket. The testimony at trial established that Wallace transported a type of coal that often does not eject easily from a dump trailer.
Wallace parked his truck and started to lift the trailer, but stopped the lifting process, moved his truck, and then resumed the lifting process.[2] There was evidence at trial to show that Wallace's trailer, after he moved it and began to dump, was parked on a six-inch side-to-side slope on the coal ramp. A co-employee standing approximately 13 feet from Wallace's truck testified that he heard a cracking noise, felt the ground shake, and felt something hit his *Page 969 
legs. He then realized that he was standing in coal up to his knees. Wallace's truck and trailer had overturned; Ms. Mallory's body was found under the trailer.
 ISSUES AND ARGUMENTS AS TO 87-810
Plaintiffs' first contention on appeal is that the trial court erred in granting Hobbs's motion for a judgment notwithstanding the jury's verdict in favor of the plaintiffs and against Hobbs. We agree.
The post-judgment motion for JNOV requires the trial court to test the jury's verdict against the evidence (viewed in a light most favorable to the non-moving party), and to determine whether there was any credible evidence from which the jury could have drawn inferences to support the verdict. Casey v.Jones, 410 So.2d 5 (Ala. 1981). On appeal, this Court determines the propriety of the trial court's ruling granting or denying a motion for JNOV by making "a purely objective determination of whether the party having the burden of proof has produced evidence requiring resolution by a jury." Ex parte Oliver,532 So.2d 627, 628 (Ala. 1988).
By granting Hobbs's motion for JNOV, the trial court held, in effect, that the plaintiffs had not produced any credible evidence in support of their claims of defects in the design of the trailer that overturned and killed Ms. Mallory. Our review of the evidence convinces us otherwise. The plaintiffs' expert, Daniel W. Smith, a mechanical engineer, testified that, in his opinion, the trailer was unreasonably dangerous because of its instability and resulting propensity to turn over, but that an anti-tipover device might have prevented this accident.
Smith acknowledged that there were several factors that could combine in varying degrees to cause a tipover, such as "sticky" or "wet" coal, putting the trailer into the dumping position while it is parked on a certain degree of ground slope, and cracks in the body or in the existing welds of the trailer — all of which were present here. Additionally, when asked to apportion the fault in causing this trailer to tip over, Smith stated that, in his opinion, the cracks in the trailer and its welds were 60-70% at fault and the design of the trailer itself was 30-40% at fault.
William Robertson, a mechanical engineer employed by Hobbs as an in-house design engineer, acknowledged that Hobbs knew of the tipover hazard involved with the design of this trailer. Robertson further testified that the Fruehauf Research and Development Department had focused specifically on the stability problem but that no studies regarding the stability problem, or efforts to cure it, had ever been undertaken by Hobbs. Robertson also stated that although Hobbs had evaluated an "outrigger" stabilizing device and had found that it improved trailer stability, Hobbs had rejected development or use of the device.
We reemphasize that we are testing the propriety of the trial court's order granting Hobbs's post-judgment motion for JNOV — a "sufficiency of the evidence" issue — and, therefore, that we must uphold the jury's verdict if there was any
conflict in the evidence for the jury to resolve. Handley v.City of Birmingham, 475 So.2d 1185 (Ala. 1985). Although certain portions of Smith's testimony were somewhat self-contradictory (to the extent that he later admitted that he was of the opinion that the design defects alone would not have caused this tipover), viewing the evidence in a light most favorable to the plaintiffs, we hold that the jury was presented with sufficient evidence to support a verdict of liability against Hobbs based on design defects.
Having so held, we turn to the plaintiffs' second argument on appeal: That the trial court erred in conditionally granting Hobbs's motion for a new trial in the event Hobbs's JNOV did not withstand appellate review.
In denying the post-judgment motions of Wallace and Creel and granting Hobbs's motion for JNOV, the trial court concluded its order by holding:
 "As provided in Rule 50(c)(1), A.R.Civ.P., the court finds that the Motion for New *Page 970 
Trial by the defendant Hobbs Trailer, a division of Fruehauf Corporation, is well taken and should be granted if the Judgment Notwithstanding the Verdict is hereafter vacated or reversed. The grounds for conditionally granting said Defendant's Motion for a New Trial is as follows:
 "1. Plaintiffs failed to prove that subject trailer was in substantially the same condition at the time of the accident as it was when it left the Defendant's hands.
 "2. Plaintiffs failed to prove that subject trailer was being applied to its intended use at the time of the accident in question.
 "3. Plaintiffs' Exhibits # 15, 16, and 17 (all patents) were improperly admitted into evidence over proper objection by the Defendant."
Unlike the "sufficiency of the evidence" standard that tests the propriety of the grant or denial of a motion for JNOV, the test of whether the trial court properly granted a motion for new trial is based upon a "weight of the evidence" standard. That is to say, on motion for new trial, the court is authorized to weigh the evidence and, upon finding the jury's verdict to be against the great weight and preponderance of the evidence, it should grant the motion for new trial if "to let the verdict stand, though supported by some evidence, would be palpably wrong and manifestly unjust." Casey v. Jones, 410 So.2d at 8. See, also, Ex parte Oliver, supra.
Here, despite the expert's testimony regarding alleged design defects in the trailer itself, the overwhelming weight of the evidence is to the effect that the condition of the trailer at the time of the tipover (i.e., cracks in the trailer and in the welds) and the manner of its operation (i.e., the driver's placement of the trailer, for purposes of unloading, on a six-inch side-to-side slope) were the causes of the tipover that resulted in Ms. Mallory's death. We hold, therefore, that the trial court was correct in conditionally granting Hobbs's motion for new trial on the grounds that the verdict in favor of the plaintiffs was against the overwhelming weight of the evidence bearing on Hobbs's liability. In so holding, we are aware of this Court's holding in Jawad v. Granade,497 So.2d 471 (Ala. 1986), which effectively narrowed the trial court's discretion in granting a new trial on the "weight of the evidence" ground. Nonetheless, we believe, after a full and detailed study of the record, that the evidence against Hobbs, although sufficient to withstand a directed verdict motion, is so scant as to invoke the trial court's limited discretion to order a new trial.[3]
There is yet another trial error upon which the court correctly based its conditional grant of Hobbs's motion for new trial. The plaintiffs' exhibits 15, 16, and 17, all patents for devices alleged to be stabilizers for trailers of the type in issue here, were improperly admitted into evidence by the trial court.
Our research has not revealed, nor have the parties cited to us, any Alabama cases dealing with the admissibility of patents under circumstances such as the ones presented by the instant appeal. This is not to say that patents are inadmissibleper se. Rather, a trial court's ruling on the admissibility of a patent is a decision that rests, for the most part, within the discretion of the trial judge, and such a ruling "will not be disturbed on appeal in the absence of a gross abuse of discretion." Russellville Flower Craft, Inc. v. Searcy,452 So.2d 478, 480 (Ala. 1984).
However, despite the aforementioned lack of precedent, the trial judge is not without guidance in this area. Rule 44(a)(1), A.R.Civ.P., sets out the minimum standard for establishing a predicate of authenticity upon which to base admissibility of documents such as the patents here offered by Plaintiffs:
"(a) Authentication. *Page 971 
 "(1) DOMESTIC. An official record kept within the United States, or any state, district, commonwealth, territory, or insular possession thereof, . . . when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by a person purporting to be the officer having the legal custody of the record, or his deputy. If the official record is kept without the state, the copy shall be accompanied by a certificate under oath of such person that he is the legal custodian of such record and that the laws of the state require the record to be kept."
Here, such a predicate was not established by the plaintiffs before offering the patents into evidence. There was no expert testimony regarding the authenticity of the patents (or a certification of authenticity by the legal custodian of the patents); nor was there any evidence of the feasibility of the devices described by the patents or even whether the devices had been shown to be workable in the industry. There was no testimony to show that the patents had been tested or used in the coal-transport industry.
The plaintiffs rely on the recent case of Alabama Power Co.v. Brooks, 479 So.2d 1169 (Ala. 1985), as authority for their argument that admission of the patents here was proper to show "national, industry wide evidence of a serious problem resulting from certain types of equipment" rather than to show that the equipment itself (here, the trailer) was dangerous. However, in Brooks, this Court held that admission of the documents in that case (not patents) was proper because an expert had first identified the documents as published articles on the subject in issue and had validated the trustworthiness and reliability of the documents. See, also, Meadows v.Coca-Cola Bottling, Inc., 392 So.2d 825 (Ala. 1981), which reaffirms the law in Alabama that, at a minimum, both learned treatises and scientific reports of governmental agencies must be testified to by an expert in the particular field in order for these documents to be admissible.
Because the requirements for establishing the minimum predicate upon which to base admissibility of the patents were not complied with, the trial court was correct in holding, as grounds for conditionally granting Hobbs's motion for new trial, that plaintiffs' exhibits 15, 16, and 17 were improperly admitted into evidence. Therefore, because of our reversal of Hobbs's JNOV (based on our holding with regard to the weight of the evidence as to the condition and operation of the trailer) and because of our holding regarding the admissibility of the patents, we affirm the trial court's conditional grant of a new trial to Hobbs.
 ISSUES AND ARGUMENTS AS TO 87-811
Defendants Wallace and Creel appeal from that portion of the trial court's judgment entered on the jury verdict in favor of the plaintiffs and against Wallace and Creel. Specifically, Wallace and Creel argue that the trial court erroneously allowed William Robertson, a Hobbs design engineer and the corporate trial representative for Hobbs/Fruehauf, to testify as an "expert" and to give his opinions as to the ultimate issues in this case (i.e., the cause for the tipover and the fault in causing the tipover to occur). We disagree.
Robertson, called as an "adverse witness" by the plaintiffs, testified that the accident occurred because the trailer was parked on uneven ground during the unloading process and that the driver was at fault for not relocating the trailer to a level site. Robertson also stated that Wallace and/or Creel should have made an inspection of, and conducted necessary maintenance on, Wallace's truck and trailer every six to twelve months.
Considered in isolation from the statements of the other witnesses, Robertson's testimony is admittedly damaging to Creel and Wallace. Moreover, Robertson's qualification as an expert and his ability to give his opinion regarding the ultimate issues in this case are doubtful. However, we must view Robertson's statements in the context of the entire record of testimony in this *Page 972 
case. This we have done, and we hold that the admission of his testimony was not reversible error. Further, the issue of whether Robertson was properly qualified as an expert lies within the sound discretion of the trial judge; we find no abuse of that discretion. See Burroughs Corp. v. HallAffiliates, Inc., 423 So.2d 1348 (Ala. 1982).
It is well established law in Alabama that a judgment will not be reversed for the improper admission of evidence unless, after an examination of the entire evidence in the case, it is clear that the evidence complained of substantially affected the rights of the complaining party. Rule 61, A.R.Civ.P.;Poston v. Gaddis, 372 So.2d 1099 (Ala. 1979); and Woods v.Hicks, 516 So.2d 656 (Ala.Civ.App. 1987). After a careful reading of the entire transcript of the trial in this case, we are convinced that the admission of the testimony of Robertson did not substantially affect the rights of Wallace or Creel.
Plaintiffs' expert, Smith, testified that the trailer was in a weakened condition at the time of this accident due to cracks in the trailer and in its welds and that, in his opinion, the trailer was not fit to be operating or to be on the road. Ed Stanzek, a senior Fruehauf development engineer, testified that, as a result of the tests conducted by Fruehauf's Research and Development Department, Fruehauf was convinced that dumping a "hung up" load from this trailer when it was parked on a side-to-side slope would cause instability in the trailer. Donald Wild, director of Fruehauf's Tooling and Equipment Engineering Department, testified that a caution plate attached to the trailer by Fruehauf when the trailer was manufactured stated that the trailer should be raised for dumping only when parked on "reasonably level" ground, and that "reasonably level," to Fruehauf, meant a slope of one inch or less. Wild further testified that the driver of the truck would be unable to determine whether the trailer was on reasonably level ground when looking from the cab of the truck.
Charles Lee Jemison, a chemical result foreman at Alabama Power's Gorgas site, admitted that Alabama Power Company employees ("spotters") would indicate to truck drivers the area in which to unload the trailers, but added that the ultimate decision of where to park and when to lift the trailer was up to the truck drivers. Damage appraiser James Coley testified that, in his opinion, the tipover occurred because the trailer was raised on uneven ground and because the load of coal stuck in the trailer. Finally, Wallace himself testified that he knew of various cracks in the trailer prior to this tipover but that he had not had time to have those cracks repaired; and Creel stated that he had never inspected Wallace's truck or trailer.
Similarly, the evidence in this case amply supports the jury's verdicts against Wallace and Creel on the plaintiffs' claims of negligence and wantonness. Indeed, our holding that the verdict against Hobbs was against the great weight of the evidence, under the totality of these circumstances, means that the great weight of the evidence places the liability for Ms. Mallory's death on Wallace and Creel. We hold, therefore, that the judgment based on the jury verdicts against Wallace and Creel and in favor of the plaintiffs is due to be affirmed.
AS TO 87-810, THE JUDGMENT NOTWITHSTANDING THE VERDICT IS REVERSED AND THE CONDITIONAL GRANT OF A NEW TRIAL IS AFFIRMED.
AS TO 87-811, AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.
[1] Although this practice was necessary in order to obtain the requisite three samples of coal from different areas of the entire load, testimony at trial revealed that the testers had been warned in weekly safety meetings about the danger of this method of collecting samples and that Alabama Power Company's written safety procedures manual required coal testers to stand away from the truck during dumping.
[2] The trailer in issue here is lifted to a "dumping position" by the extension of a hydraulic cylinder that extends much like a telescope.
[3] We note that grounds 1 and 2 of the trial court's order conditionally granting the new trial, technically speaking, are grounds for JNOV and not for new trial. We are convinced from a full reading of the order, however, that the trial court meant merely to single out these two areas in which the evidence was overwhelmingly favorable to Hobbs — and thus to indicate that the verdict for the plaintiffs was against the great weight of the evidence. *Page 973