The issue in this appeal is whether the trial court erred in not granting the motion of defendant Alabama Power Company (hereinafter "APCo") for a directed verdict at the close of the plaintiff's case.
The plaintiff, Donald Thomas Williams, was a sheet metal worker employed by Combustion Engineering Company, which was hired by APCo to perform boiler maintenance and repair at APCo's Barry Steam Plant in Mobile County. Williams was working on a scaffold, which consisted of two 2 x 12 boards, the outer ends of which were supported on metal handrails. At a point where the two boards overlapped in the middle, they were supported on a one-inch metal pipe leading out of the boiler, and known as an "impulse line," a low-pressure line that led to a meter and served as a means of measuring pressure inside the vessel. The scaffold had been erected by other Combustion Engineering employees. As plaintiff Williams and another Combustion Engineering employee were using the scaffold, the impulse line supporting the center of the scaffold broke, and the scaffold collapsed. There is no question that the impulse line was not intended for supporting scaffolds, although there was some testimony that pipes are sometimes used by workmen as scaffold supports. The impulse pipe had rusted on the inside. As a result of the collapse of the scaffold, Williams fell and received a dislocated right shoulder, cuts, and abrasions, and he experienced some permanent disability.
Williams sued APCo, alleging that APCo had reserved the right of control over the manner of Combustion Engineering's employees' work, thus creating a duty to provide Williams with a safe place to work, that APCo voluntarily undertook to inspect the work site for safety and did so negligently, and that APCo negligently failed to warn Williams or Combustion Engineering of an alleged latent defect on the premises. At the close of Williams's case, APCo moved for a directed verdict on all three claims; that motion was denied. At the close of all the evidence, APCo again moved for a directed verdict. At that time, the trial court granted APCo's motion as to the claim that APCo had reserved the right of control over the manner of the work, but denied it as to the other two claims. Those two claims were submitted to the jury, and the jury returned a verdict for Williams in the amount of $230,000. APCo filed a motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial. The trial court denied that motion, and APCo appealed.
A motion for directed verdict tests the sufficiency of the opponent's evidence. Coburn v. American Liberty Ins. Co.,341 So.2d 717 (Ala. 1977). A post-trial motion for JNOV, like a trial motion for *Page 591 
directed verdict, is the proper procedural device for challenging, among other things, sufficiency of the evidence, and it permits the trial court to revisit its earlier ruling denying the motion for directed verdict. Barnes v. Dale,530 So.2d 770, 776 (Ala. 1988). On a motion for JNOV, the evidence must be viewed in a light most favorable to the non-moving party. Mallory v. Hobbs Trailers, 554 So.2d 966, 969 (Ala. 1989). A directed verdict is proper only where there is a complete absence of proof[1] on an issue material to the claim or where there are no disputed questions of fact on which reasonable people can differ. Ford Motor Co. v. Phillips,551 So.2d 992, 994 (Ala. 1989); Caterpillar Tractor Co. v. Ford,406 So.2d 854, 856 (Ala. 1981).
Regarding Williams's claim that APCo voluntarily undertook to inspect the premises and inspected them negligently, this Court has stated that in a suit of this type, the plaintiff must prove (1) that the defendant had undertaken to inspect the site, particularly the area in which the injury-causing hazard is located, (2) that the defendant performed such inspection negligently, and (3) that such negligence proximately caused the injuries. Columbia Engineering Int'l, Ltd. v. Espey,429 So.2d 955, 965 (Ala. 1983); Pate v. United States Steel Corp.,393 So.2d 992, 995 (Ala. 1981); Hughes v. Hughes,367 So.2d 1384, 1387 (Ala. 1979). The defendant's contractual right to enforce safety if a violation is observed does not, alone, constitute a voluntary assumption of the duty to inspect for safety. 429 So.2d at 966. Also, the defendant's having employees on the site to monitor contract compliance by the independent contractor will not impose a legal duty of safety inspection upon the defendant. 429 So.2d at 967-68.
After a review of the record, it is apparent to us that most of the evidence relied upon by Williams on his negligent safety inspection claim was adduced after the plaintiff had rested, and, therefore, after the defendant had made its motion for a directed verdict.[2] The evidence produced during the plaintiff's case consists of hypothetical questions and answers that show no more than that if one of APCo's employees saw a scaffold supported by an impulse line, then it would be his job to point it out to Combustion Engineering.[3] The evidence *Page 592 
produced by Williams shows only that APCo employees were on site to insure contract compliance, that none of them undertook to inspect for safety, and that none of them saw or inspected the scaffold in question.[4]
After our review of the evidence, we hold that there was no evidence produced by Williams that goes to prove that APCo voluntarily undertook to inspect the work site or the area of the scaffold in question. Therefore, the trial court erred in submitting this claim to the jury.
As to Williams's claim of a failure to warn of a latent defect, the record shows that Williams did not produce a scintilla of evidence that APCo knew, or should have known, of the dangerous condition of the impulse line pipe supporting the scaffold. There is no evidence that APCo approved the use of impulse lines for supporting scaffolds or that APCo knew that Combustion Engineering had erected this scaffold on this impulse line. Indeed, Williams's evidence showed that interior corrosion of pipes of this type was common knowledge among engineers in the industry; thus, Combustion Engineering had knowledge of the pipe's potential danger equal to the knowledge of APCo, and, yet, Combustion Engineering placed this scaffold on this pipe notwithstanding its knowledge of the danger. Williams did produce evidence that APCo employees had been near the scaffold and that one of these employees could have seen that the scaffold was supported by the impulse line, but clearly the evidence was not of the type and quality that this Court has held sufficient in such cases as Hodge v. UnitedStates Fidelity Guaranty Co., 539 So.2d 229 (Ala. 1989), andUnited States Fidelity Guaranty Co. v. Jones, 356 So.2d 596
(Ala. 1977), two cases relied upon by the plaintiff. There is no duty to warn an invitee who has equal or superior knowledge of a potential danger. Quillen v. Quillen, 388 So.2d 985, 989
(Ala. 1980). Further, a premises owner does not owe a duty of care to employees of an independent contractor with respect to working conditions arising during the progress of the work on the contract. Weeks v. Alabama Electric Coop., Inc.,419 So.2d 1381, 1383 (Ala. 1982). Here, during the course of performing the work called for in the contract, Combustion Engineering placed this scaffold on the impulse line without APCo's knowledge or consent. Therefore, the trial court also erred in submitting Williams's failure-to-warn claim to the jury.
For these reasons, we hold that the trial court erred in not granting APCo's motion for a directed verdict on all claims at the close of Williams's case and in not granting APCo's motion for JNOV. Therefore, the *Page 593 
judgment of the trial court is reversed and judgment is rendered in favor of APCo.
REVERSED AND JUDGMENT RENDERED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.
[1] Williams's action was pending on June 11, 1987; therefore, the standard applicable to this case is the "scintilla rule." Ala. Code 1975, § 12-21-12.
[2] In its reply brief, the defendant answers the plaintiff's argument that there was sufficient evidence presented on his negligent inspection claim and his failure to warn claim, as follows:
 "Williams complains that APCo's statement of facts omits certain 'essential' facts, is biased, and otherwise inappropriate under the applicable standard of review. His own selective rendition of the facts, however, is characterized by a complete failure to distinguish the evidence adduced in his case from that adduced in APCo's case, and a rather obvious omission of certain key facts adduced in his own case which are fatal to the two theories which survived the motion for directed verdict. When one considers the state of the evidence as of page 223 of the Reporter's Transcript, at which time Williams had rested and APCo filed and began to argue its motion for directed verdict, one then realizes that Williams did not adduce sufficient evidence on either his 'voluntary undertaking to inspect for safety' theory or his 'failure to warn of a latent danger' theory. At this point in the case, plaintiff had essentially put all his 'eggs in the reservation of control basket,' which was ultimately directed out of the case. Having focused all his evidence on the 'control' theory, the record was devoid of any evidence on the claims of 'voluntary undertaking' and 'latent defect.' "
[3] In his brief, the plaintiff argues that the evidence was sufficient, as follows:
 "Glenn Wetzel, APCo's outage coordinator for the area where Mr. Williams was working, testified that he was responsible for correcting safety hazards when he observed them:
 "Q. If you saw that scaffolding up there supported in the middle by a rusty pipe exiting the duct work on the number five air heater duct work, it would be your job to point that out and get it corrected?
"A. Yes, sir.
 "In addition, Wetzel testified that he and the five other outage coordinators were present at Unit # 5 on a day-to-day, hour-to-hour, basis to inspect the work of Combustion Engineering and to insure its compliance with the construction contract. One of the provisions in the construction contract required Combustion Engineering to work with safe equipment. Wetzel testified that one of his jobs as outage coordinator was to insure that Combustion Engineering was complying with the contract by working with safe equipment. Wetzel testified that he was present at Unit # 5 every day during the outage, including the day Mr. Williams fell. Wetzel testified that he could not recall whether he had seen the scaffold before Mr. Williams' fall."
This hypothetical question and the answer thereto used by the plaintiff to support his claim describes only what would happenif Wetzel had inspected the scaffold. It does not show a voluntary undertaking to make such an inspection, nor does it create a duty to do so. Indeed, Wetzel testified: "I had not been on that scaffold, no, sir. I can tell you I had not been in the area to inspect."
[4] The record does show that APCo "outage coordinators" were on the job site, but their presence was consistent with the subject contract, which provided, in part:
 "It is also understood and agreed that [APCo] may at all times have the right to have its engineers, or other authorized representatives, inspect the work being done under the contract and to ascertain whether all work is being done in accordance with these Instructions to Bidders and General Conditions, and the Specifications and drawings, not for the purpose of controlling the method and manner of the performance of the work, but in order to assure that all work meets the requirements of the aforesaid documents and also to assure that work is prosecuted at a rate consistent with the over-all schedule of the project."
The presence of such coordinators on the project to insure contract compliance neither constitutes the control over the employees of an independent contractor, thereby creating a duty upon the premises owner to provide them with a safe place to work (as was recognized by the trial court when it granted the directed verdict on this claim), nor supports a claim of voluntary undertaking. Espey, 429 So.2d at 966-67 ("[i]n fact, it would be hard to envision a large project of this nature without such activity on behalf of the owner").