United States Fidelity and Guaranty Company (hereinafter "USF G") appeals from a judgment entered on a jury verdict assessing damages of $500,000 for Wilma Hodge and $20,000 for Ernest Hodge. We affirm.
The facts relevant to this case are as follows:
USF G was the workmen's compensation insurance carrier for Sunbelt Wood Components. Sunbelt Wood Components manufactures trusses, or roof supports. The process of converting the raw lumber into the trusses entailed bringing the lumber into the building by forklifts; the forklift operator would place the lumber onto carts to be rolled to the presses by the individual press operators. USF G's policy to Sunbelt went into effect on July 1, 1984. USF G's loss control inspector, Mr. Heath McMeans, made a "prospect inspection" of Sunbelt's plant on June 12, 1984. If Mr. McMeans identified any hazards during his inspection, they would be written up in a report. This report would contain recommendations with regard to any hazards or potential hazards discovered during the inspection and would be submitted to USF G once the policy was written. Mr. McMeans's inspection lasted three to four hours and involved an inspection of the entire one-room plant. The report prepared by Mr. McMeans following his inspection did not identify the carts as a potential hazard and did not contain any recommendations as to the use of the carts.
On October 15, 1984, Wilma Hodge was injured when a cart holding a load of lumber broke apart and caused the lumber to fall on her. At the time, Mrs. Hodge was employed as a press operator at the Sunbelt plant and was working at her station when the cart broke apart behind her.
The carts used to transport the lumber were constructed of a rectangular steel framework with four uprights welded together. Some of the carts were apparently built in the plant by the maintenance man. Carts built when the plant first opened were still being used when this accident occurred. Newer carts had been built periodically as they were needed. The carts held a load consisting of 300 to 350 pieces of wood 14 feet long and weighing a total of 1200 to 1700 pounds.
Just before the accident that injured Mrs. Hodge occurred, uprights on the cart involved had been bent when a load of wood was placed on it by a forklift operator. A maintenance man had attempted to straighten the uprights by turning the cart on its side and banging the uprights with the forklift. Once this was done, the load of lumber was placed on the cart again. Shortly thereafter, as the cart was being rolled past Mrs. Hodge to one of the presses, it broke apart and dumped the load onto Mrs. Hodge.
Apparently, there had been previous problems with these carts. The uprights on the carts were often bent, the carts were hard to roll, and when the steel bands holding the wood were cut, wood would sometimes fly out. One worker had been injured when a piece of wood flew out of a cart and struck her on the head. The maintenance man responsible for repairing these carts had, on previous occasions, straightened the uprights and welded broken carts back together.
Mrs. Hodge sustained injuries to her pelvic area and lower back. Five years after this accident, Mrs. Hodge suffered a stroke that rendered her partially paralyzed and unable to speak. One of her treating physicians, *Page 233 
who testified at trial, linked the stroke to the load of wood falling on her.
On October 11, 1985, Wilma Hodge and her husband, Ernest Hodge, sued USF G; James Green, a Sunbelt employee; Eloy Silva, the plant manager; and Vernon Brown, the general manager of Sunbelt, pursuant to Ala. Code 1975 § 25-5-11, alleging that Mrs. Hodge's injuries were caused by the negligent inspection of the Sunbelt plant by USF G and the failure of her co-employees to provide her with a safe place to work. Mr. Hodge sued for loss of consortium resulting from his wife's injuries. A summary judgment was entered in favor of USF G, and the Hodges appealed to this Court. This Court reversed the judgment and remanded the case for a new trial. Hodge v. UnitedStates Fidelity Guaranty Co., 539 So.2d 229 (Ala. 1989). On remand, the case was mistried because of improper remarks made in the plaintiffs' opening statement. The next day the case proceeded to trial, and on February 9, 1990, the jury returned its verdict in favor of the Hodges. USF G timely filed a motion for a new trial and alternative motions for a judgment notwithstanding the verdict and for remittitur, all of which were denied. The trial court entered a judgment on that verdict.
USF G now appeals, asking this Court to reverse and remand for a new trial. The two co-employees, Silva and Brown, also appeal, adopting the briefs of USF G. USF G raises four issues for our review: (1) whether the trial court erroneously admitted testimony of Mrs. Hodge's treating physician relating the stroke she suffered to the accident at Sunbelt five years earlier; (2) whether USF G can be held liable for negligent inspection where, it says, there was no proof that its inspector saw the injury-producing hazard; (3) whether the trial court erroneously required USF G to strike a second jury from the venire that, it says, was tainted by statements made by the plaintiffs' counsel; and (4) whether the trial court erred in admitting a logbook kept pursuant to requirements of the Occupational Safety and Health Administration (known as the "OSHA 200 log") (USF G argues that the evidence indicated this logbook was not in existence at the time of the USF G inspection).
USF G first argues that the trial court erred by admitting the testimony of Dr. Santos, one of Mrs. Hodge's treating physicians. Specifically, USF G contends that Dr. Santos's testimony relating the stroke Mrs. Hodge suffered in 1989 to the accident at the Sunbelt plant in 1984 was inadmissible. We disagree.
Dr. Santos testified that because of Mrs. Hodge's inability to move and her inactivity as a result of the injuries she sustained in the accident at Sunbelt, the degenerative process leading to the stroke was hastened. When asked if he related the stroke to the accident, Dr. Santos testified in pertinent part:
 "Yes, because the patient was forty-nine years old or fifty when she was working quite healthy in one of the plants here. And then after the accident, you saw a very rapid deterioration.
 "We know a stroke and heart disease are degenerative disease of the artery. This usually comes when you're sixty-five or sixty [sic] years old. But in this patient, I believe because of her inactivity and because of gaining weight because she cannot move, the degenerative process was hastened. That's all the connection I can give you."
USF G contends that Dr. Santos's connection of the stroke to the prior accident is merely speculation and conjecture. However, in this case, while USF G correctly points out that there were other possible causes of this stroke, Dr. Santos's testimony points to a specific theory of causation, the accident at Sunbelt. In Bradford v. McGee, 534 So.2d 1076
(Ala. 1988), this Court was faced with a similar situation where expert testimony indicated a causal connection while there existed other potential causes of the disease. In rejecting the defendant's argument that the testimony was merely conjecture on the part of the expert, this Court stated:
 "The evidence established through Drs. Faustin, Huddleston, Meyers, and Davis has selective application to this one theory. *Page 234 
Their testimony constituted a scintilla of evidence that Dr. Bradford's alleged negligence probably caused Bentley's cerebral palsy."
Id. at 1085. In the present case, the evidence regarding Mrs. Hodge's stroke, established through her treating physician, has selective application to a single theory of causation, that being the earlier accident at Sunbelt. The mere fact that there exist other plausible causes of the stroke does not make Dr. Santos's testimony inadmissible or speculative. Dr. Santos had been treating Mrs. Hodge for some time and he stated that he believed the accident hastened the degenerative process that ultimately caused the stroke. His testimony established sufficient evidence that the accident at Sunbelt caused the stroke and, therefore, that testimony was properly admitted into evidence for the jury to consider.
USF G's second argument is that it cannot be held liable for negligent inspection, because, it says, the Hodges presented no proof that the USF G inspector inspected the alleged hazard. USF G maintains that an essential element of the tort of negligent inspection — a voluntary undertaking by the insurance company to inspect the injury-producing hazard — was not established by the plaintiffs. USF G maintains that the injury-producing hazard was the straightening of the uprights of the carts with the forklift and that, because USF 
G's inspector, Mr. McMeans, testified that he never saw this practice or specifically inspected the carts, there was no inspection of the injury-producing hazard and, therefore, that the plaintiffs' claims should not have been submitted to the jury. While USF G's argument is well taken, we conclude that the record does, in fact, indicate that USF G voluntarily undertook an inspection of the injury producing hazard.
In order for a claim of negligent inspection to be submitted to a jury, a plaintiff must present substantial evidence of the following: (1) that the defendant had a duty, or assumed a duty, by voluntarily undertaking the inspection; (2) the scope of that duty; (3) that the duty was breached; (4) that there was damage or injury; and (5) that the injury was proximately caused by that breach. Fireman's Fund American Insurance Co. v.Coleman, 394 So.2d 334, 349 (Ala. 1980).
In our opinion, the injury-producing hazard was the cart itself, rather than the practice of banging the carts with the forklifts, as USF G maintains. From a careful examination of the record, it is apparent that the plaintiffs did present sufficient evidence that USF G's inspector, Mr. McMeans, inspected the injury-producing hazard. While Mr. McMeans testified that he did not specifically inspect the carts, he did carefully inspect the entire work area and remembered seeing the carts.
USF G presents several cases in support of its argument that because no proof was offered showing that Mr. McMeans ever specifically inspected the carts, there can be no basis for a claim of negligent inspection. However, this case presents a different scenario. All of the cases cited by USF G deal with situations where the inspector either conducted a general inspection, did not inspect the work area where the injured employee was working, or conducted the inspection while the plant was not in operation. See Clark v. Floyd, 514 So.2d 1309
(Ala. 1987); Adams v. Travelers Insurance Co., 494 So.2d 401
(Ala. 1986); Barnes v. Liberty Mutual Insurance Co.,472 So.2d 1041 (Ala. 1985). In the case at hand, Mr. McMeans conducted a very detailed and thorough inspection of the entire work area while the one-room plant was in operation. He observed the entire process of manufacturing trusses from the raw lumber. Although he testified that he did not inspect the carts, he said that he did remember seeing them in use throughout the work area. This evidence, established by the record, is, in our opinion, substantial evidence of a voluntary undertaking by USF G to inspect the injury-producing hazard, and is sufficient for the plaintiffs' claims to be submitted to the jury.
Moreover, this Court has established that the plaintiffs presented sufficient evidence *Page 235 
to create a jury question as to whether USF G had inspected the injury-producing hazard. In reversing the summary judgment entered in favor of USF G in Hodge v. United States Fidelity Guaranty Co., 539 So.2d 229, 231 (Ala. 1989), this Court stated:
 "A review of the record establishes some evidence (1) that the defendant, USF G, assumed a duty by voluntarily undertaking the inspection in question; (2) that the scope of the duty included a survey of machinery and equipment in the area in which the lumber carts were located; (3) that the duty was owed to those employees of the class who would be operating those carts; (4) that this duty was breached by the failure to recognize the unsafe character of the carts; and (5) that injury occurred as a proximate cause of the breach of that duty.
". . . .
 "Thus, there is evidence that this inspection was to some degree a 'safety' inspection, and that it failed to reveal a condition as to which observation and communication would likely have prevented injury to the plaintiffs. . . ."
Because we have found that the record in the case now before us establishes sufficient evidence of a voluntary undertaking by USF G to inspect the injury-producing hazard, and because this Court in Hodge v. United States Fidelity Guaranty Co.,539 So.2d 229 (Ala. 1989), in reversing a summary judgment, similarly found that there was evidence of an undertaking to inspect the hazard, we hold that the trial court did not err in regard to this contention.
USF G next argues that the trial court committed error by requiring it to strike a jury from the venire that it alleges was tainted by statements made by opposing counsel the previous day that had resulted in a mistrial. The trial court declared a mistrial after the plaintiffs' counsel made improper remarks in the opening statement. The next day a new jury was selected from the same venire from which the previous jury had been selected. USF G argues that those 13 jurors who had been on the previous jury tainted the entire venire when they were returned to the venire and that the trial judge abused his discretion in refusing to grant a continuance and requiring USF G to select another jury from this allegedly tainted venire.
We do not believe that the trial judge abused his discretion in requiring the parties to select a new jury from the same venire. The trial judge made every effort to ensure that USF 
G would not be prejudiced in any way by selecting a new jury from the same venire. The record reflects that the trial judge excluded jurors that USF G expressed concern over. The trial court stated:
 "There were two witnesses that they were particularly — I say witnesses, I mean jurors — they were particularly concerned about, Mr. Weems and Mr. Williams. Both of those jurors were jurors in that case that we had yesterday that was mistried.
 "None of those jurors will be brought down so the two that you were concerned about will not be a part of the ones that were drawn because they were on the jury that was mistried yesterday."
Furthermore, at the time of the mistrial, the trial judge instructed the jurors not to discuss the events of the trial when they returned to the venire. The trial judge was also very specific in instructing the plaintiffs' counsel not to go into the issue that had caused the mistrial on the previous day. The trial judge's actions indicate to us that he protected the interests of USF G by ensuring that no prejudice would result from selecting another jury from the same venire, as well as the interests of the plaintiffs in seeing that the case was not delayed. We find no evidence of prejudice suffered by USF G as a result of the trial judge's actions, nor any evidence that the trial judge abused his discretion in refusing to grant a continuance.
USF G's final argument is that the judge erred in allowing into evidence Sunbelt's OSHA 200 log, because, it maintains, the evidence indicated that the log was prepared after the USF G inspection. *Page 236 
USF G argues that its inspector could not possibly have been made aware of prior safety problems cited by OSHA if the log was not in existence at the time of Mr. McMeans's inspection. Sunbelt was cited by OSHA in February 1984 for not keeping injury statistics. The evidence presented indicated that the log had been maintained prior to this citation because the log contained entries dating back to January 1984.
USF G's argument seems to center on the fact that the entries in the OSHA log do not appear in chronological order and appear to have been photocopied backward. The trial court conducted its own examination of the witness through whom this log was offered into evidence. During this examination that witness testified that in his "best judgment" the log was in existence prior to the USF G inspection. The trial judge also ordered that all entries prior to January 1984 be deleted before the log was admitted into evidence. Thus, the only part of the log given to the jury was the part containing those entries made from January 1984 until the accident that caused Mrs. Hodge's injuries. We believe that this testimony established sufficient evidence that the log book was in existence prior to USF G's inspection and was properly admitted into evidence.
The judgment is affirmed as to all three appeals.
89-1270 — AFFIRMED.
89-1271 — AFFIRMED.
89-1272 — AFFIRMED.
HORNSBY, C.J., and KENNEDY and INGRAM, JJ., concur.
HOUSTON, J., concurs in the result.