614 So.2d 975 (1992)
Jerry PARKER
v.
Charles WARD and Commonwealth Land Title Insurance Company.
1910578.
Supreme Court of Alabama.
August 7, 1992.
As Modified on Denial of Rehearing March 12, 1993.
J.E. Sawyer, Jr., Enterprise, for appellant.
Kenneth T. Fuller of Cassady, Fuller & Marsh, Enterprise, for appellees.
Jeffrey W. Blitz and Jack B. Hinton, Jr. of Rushton, Stakely, Johnston & Garrett, P.A., Montgomery, on rehearing, for amicus curiae Lawyers Title Ins. Corp.
John S. Bowman and James A. Byram, Jr. of Balch & Bingham, Montgomery, on rehearing, for amicus curiae First American Title Ins. Co.
SHORES, Justice.
Is a title insurance company liable to its insured for failing to list a recorded timber deed as an exception on a title insurance policy? This is the single issue involved in this appeal. The trial court entered a summary judgment for the defendant, Commonwealth Land Title Insurance Company; Jerry Parker, the plaintiff, appeals. We reverse and remand.
On August 14, 1987, D. Patrick Haney and John P. Russell jointly purchased 589 acres of land in Coffee County. Three days later, Haney and Russell conveyed all the standing timber that was on the property to Flack-Haney Company, Inc., by deed. The timber deed was duly recorded in the Coffee County probate office.
Jerry Parker purchased 335 of the 589 acres in September 1987. A written agreement reserved the timber to the sellers. Thereafter, between September 1987 and March 1988, Haney cut the timber on the 335 acres.
In December 1987, Haney and Russell conveyed their remaining land to C.E.F., Inc., a corporation they had formed. In March 1988, Jerry Parker negotiated with Haney to purchase two additional tracts, consisting of a 10-acre parcel and a 30-acre parcel. Parker did not walk over the land but viewed it from the road, and, at *976 the time, the timber had not been cut on those parcels.
When Parker agreed to purchase the property from C.E.F., he also entered into a contract with Commonwealth Land Title Insurance Company and Charles Ward, individually, d/b/a Coffee County Abstract & Title Company, under which Commonwealth agreed to issue a title insurance policy that insured Parker free and clear title. Pursuant to that agreement, a policy of title insurance was issued; that policy stated that as of 4:10 p.m. on April 5, 1988, fee simple title to the land involved was vested in insureds Thomas G. Parker and his wife, May Rose Parker. The policy then described the land by reference to the Government survey.
Exclusions from Coverage included:
"3. Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company and not shown by the public records but known to the insured claimant either at Date of Policy or at the date such claimant acquired an estate or interest insured by this policy and not disclosed in writing by the insured claimant to the Company prior to the date such insured claimant became an insured hereunder...."
(Emphasis added.)
The policy insured title to the estate in fee simple, subject to exceptions contained in Schedule B, which read as follows:
"This policy does not insure against loss or damage by reason of the following:
"1. Rights or claims of parties other than Insured in actual possession of any or all of the property.
"2. Unrecorded easements, discrepancies or conflicts in boundary lines, shortage in area and encroachments which an accurate and complete survey would disclose.
"3. Unfiled mechanics' or materialmen's liens.
"4. Mortgage from Thomas G. Parker and wife, May Rose Parker to South-Trust Bank of Coffee County, Elba, Alabama, showing an original sum of $10,715.60 dated April 1, 1988, in Mortgage Book 86A, page 511 in the Office of the Judge of Probate, Coffee County, Elba, Alabama, recorded April 15, 1988.
"5. Rights-of-Way for public roads crossing said lands.
"6. Prior reservations of Mineral rights (an undivided one-half interest) as recorded in Probate Office, Elba, Coffee County, Alabama in Deed Book 87-A, pages 171-172.
"7. Any state of facts which constitute an objection to title that might be shown by an accurate survey.
"8. All taxes due in the year 1988, which are a lien but not yet payable."
It is not disputed that when Parker purchased the property and when the title policy was issued there was a timber deed from Parker's grantor to a third party, which was in the recorded chain of title, and which was, in fact, recorded in the public records in the office of the judge of probate at Deed Book 87-A, page 143. However, Parker's title insurance policy did not list the timber deed, nor did the policy exclude the timber from coverage. Flack-Haney, as owner of the standing timber by virtue of the recorded timber deed, cut the timber on Parker's land.
Consequently, Parker sued, alleging that Commonwealth and its agent, Charles Ward, had breached the agreement between them "by not informing or listing on said policy of insurance the exception to the property that the timber located on said property had previously been sold by virtue of a timber deed." Parker subsequently filed an amended complaint substituting C.E.F. for fictitiously named party X in the original complaint. On December 7, 1989, Commonwealth moved for a summary judgment, which was entered on March 14, 1990. Parker appeals from this judgment, which the trial court made final pursuant to Rule 54(b), A.R.Civ.P. Parker's claims against C.E.F. alleging breach of contract and fraud are still pending; C.E.F. is not a party to this appeal.
*977 An outstanding timber deed, under which the grantee acquires a right to enter upon the land, constitutes a defect in the title. "A defect in title exists when the aggregate of rights, privileges, powers and immunities known as ownership [fee simple title] is subject to the claims of others."[1] The policy insures against losses from such defects, unless those defects are excepted from the coverage.
It has been observed that title insurance is not, in fact, insurance, because title policies except any risks apparent after a title search.[2] In this case, Parker admits that Commonwealth had a contractual right to except the timber deed from coverage under the policy, but, because it did not do so, he argues that the policy either affords coverage from loss due to that defect in the title insured or Commonwealth breached an implied agreement to disclose defects in his title that are a matter of public record.[3]
A title insurance company has an obligation to answer for any loss due to a defect in a title if it has not excepted that defect from its coverage. It cannot escape liability when it does not except a defect that is a matter of public record. It is generally assumed that a title defect that appears in the public records but that is not noted is covered by a title policy.[4]
Commentators have urged, and some courts have held, that a title company, in the absence of an express promise to search title, has an implied duty to search the title and disclose any defect found upon the public record.[5] Because the policy itself insures against loss or damage from defects in the title, subject to certain exceptions set out in the policy, it necessarily follows that it insures against any defect that is a matter of public record if that defect is not excepted from the coverage. In this case, the policy excepted certain defects that were a matter of public recorde.g., the mineral deedbut did not except the timber deed. Under these facts, the timber deed should not be excepted from the coverage, and the title company should be held liable for any loss occurring from this defect in the title, or, alternatively, it should be held liable to its insured for failing to disclose this defect. It has been said that the most common error in the title insurance industry is the negligent failure to note a title defect appearing in the public records.[6]
The question presented by this case may be an unsettled one in other jurisdictions, but it has been resolved here. In Upton v. Mississippi Valley Title Insurance Co., 469 So.2d 548 (Ala.1985), this Court held that a title insurance company had a duty to search the public records and to reveal any defect that such a search might disclose, but that the duty did not extend beyond the title records in the office of the judge of probate to include a search of the circuit court records, as the insured contended. In that case, a judgment granting third parties an easement or right-of-way over the land involved had been entered in a litigated case. It was filed in the office of the clerk of the circuit court, but was never recorded in any record book in the office of the judge of probate. Mississippi Valley Title Insurance Company searched the title to the property before issuing its binder. The search included records in the office of the judge of probate, the tax assessor's office, the tax collector's office, and the United States Bankruptcy Court. It did not include the records in the office of the clerk of the circuit court. The plaintiff claimed that Mississippi Valley's failure to find and list the easement judgment as an exception was a breach of the title insurance *978 binder and policy and that Mississippi Valley had negligently failed to uncover an easement of public record.
This Court held that because the title insurance policy excluded from coverage "any easement not shown by the public records" (emphasis in original) and because the term "public records" was defined in the policy as "those records which by law impart constructive notice of matters relating to said land" (the exact definition of "public records" contained in the policy that is the subject of this action), the title company was obligated only to search the records of the probate court because those were the only public records that, by law, imparted constructive notice of easements.
Thus, this Court held that the title company had a contractual obligation to search (and disclose) at least those records that, by law, impart constructive notice of matters relating to the land. The policy in this case is not materially different from that considered by the Court in Mississippi Valley. In fact, it is identical in all material respects. In this case, the timber deed was in the chain of title and it was recorded in the office of the judge of probate. "Public records" is defined in this policy in exactly the same language as that contained in the Mississippi Valley policy. Commonwealth, therefore, had a contractual duty to search those records and to disclose to its insured a defect in title that those records contained.
The Court in Mississippi Valley held that there was no common law duty on title insurance companies to search circuit court records. It did not hold that there was no common law duty on title companies to search title records in the office of the judge of probate. That was not the issue before the Court. In that case, the title company did, in fact, search the records in the office of the judge of probate. In this case, Commonwealth apparently searched the records in the office of the judge of probate, because it excepted from its coverage some, although not all, of the defects shown by those records. To hold that it is not liable to its insured either for breach of its contractual obligation to search those records or breach of a common law duty to search those records (imposed by the relationship of the parties) is to disregard the law in this state.
In Fox v. Title Guar. & Abstract Co. of Mobile, 337 So.2d 1300 (Ala.1976), this Court reversed a summary judgment for the title company in a case in which the plaintiffs alleged a negligent failure to discover a tax lien. The Court held that the title company had a duty to discover the tax lien, and that it should not be allowed to profit (to be unjustly enriched) from its failure to do so. Id. at 1303. Justice Jones, concurring specially, noted:
"Ordinarily the purchaser contracts for a policy of insurance to guarantee title to property to which he is a stranger. If there are encumbrances which are overlooked and not excepted by the title insurance company, the purchaser's loss flows directly from this breach of obligation."
337 So.2d at 1305.
It is no answer to Parker's contention that § 35-4-363, Code of Alabama 1975, makes standing timber and cutting rights personal property while owned by one other than the owner of land. An outstanding, recorded timber deed constitutes a defect in the title against which Commonwealth contracted to insure Parker. It had a contractual obligation to search the records in the office of the judge of probate and to disclose any defect in those records to Parker, or else to compensate him for any loss suffered as a result of that defect.
The trial court erred in entering the summary judgment in favor of Commonwealth. Commonwealth may have a defense to Parker's action for breach of contract if it can prove to the satisfaction of a factfinder that he knew, as it asserts in its brief, that the timber on the land he bought had been previously deeded away, but that issue was not resolved on the motion for summary judgment.
Some commentators have stated that, under these facts, a title company should be held liable for damages beyond the limits of the title policy. They argue *979 that a title company has a duty to search (as this Court held in Mississippi Valley) and that the negligent failure to disclose a defect that is a matter of public record entitles the insured to damages beyond those contracted for.[7] Our research has disclosed no case where the argument was advanced that the title company was not liable for losses flowing from defects in the title insured against, which is the argument advanced by Commonwealth here. To be sure, Commonwealth rests its argument on § 35-4-363, Code of Alabama 1975. That statute cannot have the effect Commonwealth suggests. Sections 35-4-360 et seq. were passed to permit grantees of timber deeds to remove timber from land without incurring liability to the landowner for trespass. Section 35-4-361 expressly states that the grantee of a timber deed has a right-of-way over and across the lands on which the timber stands for the purpose of cutting and removing the timber. Thus, an outstanding timber deed is a defect on the title, and, if it is recorded in the office of the judge of probate, the title company is obligated to find and disclose it to its insured or else to compensate for any loss suffered as a result of that defect.
For the reasons stated, the judgment is reversed and the case remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and ADAMS, KENNEDY and INGRAM, JJ., concur.
MADDOX, HOUSTON and STEAGALL, JJ., dissent.
HOUSTON, Justice (dissenting).
The complaint involved in this case reads in pertinent part as follows:
"On or about the 5th day of April, 1988, [Parker] and [Commonwealth] entered into an agreement whereby [Commonwealth] agreed to issue a policy of title insurance ... thereby insuring [Parker] of a free and clear title to [the land in dispute] described in Exhibit `A'.
"[Commonwealth] breached said agreement by not informing or listing on said policy of insurance the exception to the property [in dispute] that the timber located on said property had previously been sold by virtue of a timber deed (see Exhibit `B')."
According to the timber deed (attached to the complaint as Exhibit "B"), Haney and Russell conveyed to Flack-Haney Company on August 17, 1987, "all Merchantable Timber standing, growing and being on the [land in dispute] ... together with all necessary rights of ingress and egress and rights of way for railroads, log carts, teams, employees, machinery and appliances for cutting and removing said timber from said lands ... [for] a period of 36 months."
Under our liberal notice pleading, the language of the complaint is broad enough to sufficiently state a claim based on an encumbrance to the title to the land by virtue of the language of the timber deed that grants Flack-Haney "rights of ingress and egress and rights of way for ... cutting and removing said timber" for approximately 2½ years after Parker purchased the land in question. However, in his deposition testimony, Parker denied a claim based on an encumbrance to the land and specifically limited his claim against Commonwealth to the claim that the title insurance policy insured the timber:
"Q. Well, did you get good title to [the property in dispute]?
"A. I have to assume that I did.
"Q. Have you ever had anyone to question your title to [the land in dispute]?
"A. No.
"Q. Do you know any defect in or lien or encumbrance on the title to that property?

"A. All I know is that there is a timber deed, according to what I was told.
"Q.... Is the only defect, lien or encumbrance or problem with that piece of property is that you didn't get the standing timber on that land?

"A. That is correct.

"Q. That is the only claim you are making against Commonwealth ... in this *980 lawsuit, is that you bought the land and the timber wasn't included?
"A. I bought the land with the understanding the timber was in there [which would have increased the value of the land].[8]
"....
"Q. That is the only question in issue in this lawsuit is to whether or not the this title insurance policy covers that timber that was cut?

"A. Right.

"Q. And if the title insurance does not include the timber then you would not be making a claim for anything else?
"A. If it had been an exclusion then I would not be.
"Q. That's what I say, if the title insurance does not insure timber, then you do not have any other claim other than timber?

"A. That is correct."
(Emphasis added.)
The purpose of title insurance is to protect the insured against defects in title, not to protect the insured against loss from physical damage to property; and title insurance companies are not required to explain the significance and effect of exculpatory covenants discovered in their title searches. Holmes v. Alabama Title Co., 507 So.2d 922 (Ala.1987).
According to the declaration page (Schedule A) of the title insurance policy issued by Commonwealth to Parker, "[t]he estate or interest in the land ... which is covered by this policy [and which is described below]" is a "FEE SIMPLE"; and "land" is defined in the policy as "the land described, specifically or by reference in Schedule A, and improvements affixed thereto which by law constitute real property." (Emphasis added.) The policy insured:
"[A]gainst loss or damage, not exceeding the amount of insurance stated in Schedule A, and cost, attorneys' fees and expenses which the Company may become obligated to pay hereunder, sustained or incurred by the insured by reason of:
"1. Title to the estate or interest described in Schedule A being vested otherwise than as stated therein...."
Section 35-4-363, Ala.Code 1975, provides:
"All standing timber and trees, and cutting rights with respect thereto, while owned by or mortgaged to anyone other than the owner of the land upon which such timber or trees are located, under or by virtue of any conveyance, mortgage or other instrument executed hereafter by the owner or owners of the entire fee simple title to the timber or trees or by the owner or owners of the full cutting rights with respect thereto shall be and shall be considered as chattels and not real property, or any interest therein, in all instances where the right or obligation to cut and remove such timber or trees is limited to a period not exceeding 10 years from date of the conveyance, mortgage or other instrument transferring such timber or trees, or rights with respect thereto."
(Emphasis added.) When timber has been conveyed to and is therefore owned by a person other than the owner of the land on which the timber stands, the timber is considered a chattel, not real property. See Crew v. W.T. Smith Lumber Co., 268 Ala. 628, 109 So.2d 721 (1959); § 35-4-363.
Based on the foregoing, I conclude that the title insurance policy Commonwealth issued to Parker did not insure the timber on the property, because the policy insured only "land," which was defined in the policy as "real property"; and the timber, which had been conveyed to Flack-Haney, was considered to be a chattel, not real property. Because Commonwealth made a prima facie showing of an absence of a genuine issue of material fact as to whether it breached its contract, the burden shifted to Parker to present substantial evidence to the contrary to defeat the summary judgment motion. This he failed to *981 do. Therefore, the trial court properly entered the summary judgment for Commonwealth.
I note that but for the express waiver of the claim of an encumbrance on the land, I would have voted to reverse, but because of Parker's deposition testimony and his statement in his brief that his only claim was that the title insurance policy insured the timber, I would affirm the judgment for Commonwealth.
MADDOX and STEAGALL, JJ., concur.
NOTES
[1] Title Insurance: The Duty to Search, 71 Yale L.J. 1161, at 1161 (1962).
[2] Q. Johnstone, Title Insurance, 66 Yale L.J., 492 at 492 (1957).
[3] Parker concedes that the only claim he states in this case is a contract claim.
[4] Id. at 495.
[5] Title Insurance: The Duty to Search, supra, at 1166, n. 32, citing Glyn v. Title Guarantee & Trust Co., 132 App.Div. 859, 861-62, 117 N.Y.S. 424, 426-27 (1909); Dorr v. Massachusetts Title Ins. Co., 238 Mass. 490, 131 N.E. 191 (1921); Ehmer v. Title Guarantee & Trust Co., 156 N.Y. 10, 50 N.E. 420 (1898).
[6] Q. Johnstone, Title Insurance, supra, at 495.
[7] Title Insurance: The Duty to Search, supra.
[8] I note that Parker purchased the land in March 1988 for $350 an acre and sold it in July 1988 for $475 an acre.