The plaintiffs, Thomas M. Soutullo and Pamela D. Soutullo, appeal from a summary judgment for the defendant, Commonwealth Land Title Insurance Company ("Commonwealth"), in their action to recover damages for negligence, wantonness, and fraudulent suppression of a material fact. We reverse and remand.
The evidence, viewed in the light most favorable to the Soutullos, suggests the following: The Soutullos purchased a house located on a lot adjacent to Dawes Road in Mobile County. Before the purchase, the real estate agent with whom they had dealt represented to the Soutullos that the lot extended to a ditch running alongside Dawes Road. As a part of the transaction — a "non-qualifying mortgage assumption," requiring no survey — the sellers purchased a title insurance policy from Commonwealth; the policy named the Soutullos as the insureds. Commonwealth, through one of its agents, conducted a title search and issued the title policy. It described the Soutullos' property as follows:
 "Lot 2, Grissett Estates, Unit One, according to the plat thereof recorded in Map Book 32, Page 69, of the records in the Office of the Judge of Probate Court of Mobile County, Alabama."
The policy provided, in pertinent part, as follows:
 "SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS CONTAINED IN SCHEDULE B AND THE PROVISIONS OF THE CONDITIONS AND STIPULATIONS HEREOF, COMMONWEALTH LAND TITLE INSURANCE COMPANY . . ., insures, as of Date of Policy shown in Schedule A, against loss or damage . . . and cost, attorneys' fees and expenses which the Company may become obligated to pay hereunder, sustained or incurred by the insured by reason of:
". . . .
 "2. Any defect in or lien or encumbrance on such title;
 "3. Lack of a right of access to and from the land;
". . . .
 "No claim shall arise or be maintainable under this policy . . . if the Company, after having received notice of an alleged defect, lien or encumbrance insured against hereunder, by litigation or otherwise, removes such defect, lien or encumbrance or establishes the title, as insured, *Page 1354 
within a reasonable time after receipt of such notice. . . ."
(Emphasis added.)
The probate records, including the plat referred to in the property description set out above, clearly indicated that the lot purchased by the Soutullos was bordered on the north, the south, and the west by other lots or tracts of land under development and that the eastern border of the lot was separated from Dawes road by a 50-foot-wide strip of land, 40 feet of which had been reserved by the sellers for the construction of a service road and 10 feet of which had been reserved by the sellers for the future widening of Dawes road. Commonwealth failed to note in the Soutullos' title insurance policy that their lot was actually "landlocked," i.e., that it was separated from Dawes Road by the 50-foot-wide strip of land reserved by the Soutullos' grantor.
After discovering that their lot was not as large as the real estate agent had represented it to be, the Soutullos hired an attorney and notified Commonwealth of the problem. Commonwealth acknowledged liability under the policy for the lack of access to the lot and immediately secured and recorded an access easement in favor of the Soutullos over the 50-foot-wide strip separating the Soutullos' lot and Dawes Road. Notwithstanding these curative steps, the Soutullos sued Commonwealth, along with others, seeking damages and alleging that Commonwealth had negligently or wantonly failed to discover and disclose the fact that they had no immediate legal means of ingress to and egress from their lot. The Soutullos also sought to recover damages from Commonwealth under Ala. Code 1975, § 6-5-102, for the suppression of a material fact.[1] The Soutullos contended, in part, that, in the absence of a survey, they had relied on the title insurance policy in deciding to purchase the lot and that Commonwealth's failure to disclose that the lot was landlocked had prevented them from discovering that the actual dimensions of the lot were not as they had been represented by the real estate agent. Simply put, the Soutullos assert that they would not have purchased the lot if they had been informed of the problem. The trial court entered a summary judgment for Commonwealth and certified it as final, pursuant to Rule 54(b), Ala.R.Civ.P., holding, as a matter of law, that Commonwealth was not liable because it had taken steps to secure an access easement in favor of the Soutullos over the 50-foot-wide strip separating their lot from Dawes Road.
Relying primarily on Parker v. Ward, 614 So.2d 975
(Ala. 1992), the Soutullos contend that the landlocked nature of their lot constituted a defect in their title and that Commonwealth had been under a duty to discover and to disclose that defect. Commonwealth argues that it was entitled to a judgment as a matter of law because it secured an easement providing the Soutullos with a means of ingress to and egress from their lot. After carefully examining the record and the briefs, we conclude that the summary judgment was improper.
We note, initially, that this is a tort action, not a contract action. Although Commonwealth's curative steps may have been sufficient under the policy's limitation-of-liability provision to preclude an action on the contract, those steps do not as a matter of law preclude the Soutullos' tort claims. SeeC C Products, Inc. v. Premier Industrial Corp., 290 Ala. 179,184-86, 275 So.2d 124, 129-30 (1972), wherein this Court noted:
 "It is stated in several of our cases that if a cause of action declared in pleading arises from a breach of a promise, the action is ex contractu [and that] if it arises out of a breach of a duty which grows out of the relationship of the parties because of the contract, the action is in form ex delicto.
 "In the fairly recent case of Waters v. American Cas. Co. of Reading, Pa., 261 Ala. 252, 73 So.2d 524 [1953], we find the doctrines of our cases pertaining to the point now being considered summarized as follows: *Page 1355 
 " 'This Court has long since taken the position that under certain circumstances, for the breach of a contract there may be either an action of assumpsit or one in tort. That means that when there is a contract expressed to exercise reasonable diligence in the performance of an act, or when there is a specific contract to do an act, a failure to exercise reasonable diligence on the one hand or to do the act on the other gives rise to an action of assumpsit. But when the contract is to exercise reasonable care to perform the act, a failure to exercise such reasonable care may be redressed [either in] assumpsit or in tort. When the contract does not in terms require reasonable care in doing the act stipulated to be done, the law imposes a duty — but does not imply a contract — to exercise due care in doing the act. . . .'
". . . .
 "Where a contract is for the performance of an act, and there is absent any contractual provision that the act will be done in a proper manner or free from negligence, the law creates a duty, but does not imply a contract, that the act will be done in a proper manner when its performance is undertaken, and a breach of this legally created duty will give rise to an action on the case, or ex delicto. In the present case, under the averments of the bill, there was a total breach of the contract by the respondents' failure to conform. A mere failure to perform a contract obligation is not a tort, and it furnishes no foundation for an action on the case.
 "The duty created by law which gives rise to an ex delicto action under certain circumstances upon breach of a contract is a duty collateral to the contract. The contract creates, or induces, or causes a condition, or state of things, which furnishes the occasion for the tort. The tort is beyond the letter of the contract, and in such situation the cause of action is in case."
(Citations and emphasis omitted.) See, also, Eidson v.Johns-Ridout's Chapels, Inc., 508 So.2d 697 (Ala. 1987); UnitedStates Fidelity Guaranty Co. v. Birmingham Oxygen Service,Inc., 290 Ala. 149, 274 So.2d 615 (1973); Brown Funeral HomesInsurance Co. v. Dobbs, 228 Ala. 482, 153 So. 737 (1934).
In Parker v. Ward, supra, in which Commonwealth was a named defendant, this Court, construing a Commonwealth policy that was not materially different from the one at issue in the present case, noted that Commonwealth was under a contractual obligation to search the probate records and to disclose any title defects and encumbrances that were not excepted in the title policy. This Court explained in Parker that " '[a] defect in title exists when the aggregate of rights, privileges, powers and immunities known as ownership [fee simple title] is subject to the claims of others.' " 614 So.2d at 977 (quotingTitle Insurance: The Duty to Search, 71 Yale L.J. 1161, at 1161 (1962)). Contrary to the Soutullos' contention, their title to Lot 2 is not defective under this definition; no part of their ownership interest in Lot 2 is "subject to the claims of others."[2] However, Commonwealth specifically insured the Soutullos against any loss or damage they might sustain by reason of a "[l]ack of a right of access to and from [their] land." As previously noted, Commonwealth acknowledged liability under the policy for the lack of legal access to the Soutullos' lot and it took steps to correct the problem. However laudable Commonwealth's action in this respect may have been, we nonetheless conclude, based on the cases cited, that Commonwealth had a corresponding legal duty, upon which a negligence or wantonness action may be based, to exercise due care in performing its contractual obligations to examine the probate records and to inform the Soutullos of a lack of access to their lot — a risk specifically insured against in the policy. Likewise, Commonwealth's contractual obligation to inform the Soutullos of an access problem could provide the basis for a suppression claim. See § 6-5-102; see, also,Boswell v. Liberty National Life Ins. Co., 643 So.2d 580
(Ala. 1994) ("[o]nce a fraud has been accomplished, subsequent actions cannot *Page 1356 
completely erase the injury done to the person against whom the fraud was committed").
The record indicates that the trial court entered a summary judgment for Commonwealth on the sole ground that Commonwealth had secured an easement in favor of the Soutullos over the strip of land separating their lot and Dawes Road. However, as we have explained, the curative steps taken by Commonwealth, while perhaps precluding liability under the policy, do not as a matter of law preclude the Soutullos from pursuing a tort remedy. With the case in this posture, and there being no clear basis in the record for affirming the summary judgment with respect to any of the Soutullos' claims, we must reverse the judgment and remand the case for further proceedings consistent with this opinion.[3]
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, STEAGALL, KENNEDY, INGRAM and COOK, JJ., concur.
[1] Claims based on allegations of misrepresentation of a material fact, suppression, negligence, and wantonness remain pending in the trial court against Century 21 Real Estate Corporation, McRae Realty, Inc., and Surety Land Title, Inc.
[2] We find it unnecessary in this case to determine whether the Soutullos' title is "encumbered," as that term is defined in our cases. See Tuskegee Land Security Co. v. BirminghamRealty Co., 161 Ala. 542, 49 So. 378 (1909).
[3] We note that the policy also provides:
 "Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the title to the estate or interest covered hereby or any action asserting such claim, shall be restricted to the provisions and conditions and stipulations of this policy."
This provision purports to release Commonwealth from all tort liability in connection with the issuance of its policies. Neither the record, nor the briefs, indicate that this provision could have formed the basis for the summary judgment. This specific provision was not cited by Commonwealth in its memorandum to the trial court in support of its motion for summary judgment or in its brief to this Court, and the trial court's judgment does not refer to it. Therefore, we think that it would be improper for us to consider for the first time on appeal the legal effect that this provision might have with respect to Commonwealth's potential liability.